NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3947-14T3
            A-3948-14T3

NORTH JERSEY MEDIA GROUP INC.,
d/b/a THE RECORD,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY OFFICE OF
THE GOVERNOR,

    Defendant-Respondent,

and

NED NURICK, ASSISTANT COUNSEL
AND A CUSTODIAN OF PUBLIC RECORDS
FOR THE OFFICE OF THE GOVERNOR,

    Defendant.

_____

APPROVED FOR PUBLICATION

August 3, 2017

APPELLATE DIVISION

Argued January 24, 2017 — Decided August 3, 2017

Before Judges Fisher, Leone and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket Nos. L-1059-14 and L-0248-14.

Samuel J. Samaro argued the cause for appellant (Pashman Stein, attorneys; Mr. Samaro and Jennifer A. Borg, of counsel and on the briefs; CJ Griffin and James W. Boyan, III, on the briefs).

Raymond R. Chance, III, Assistant Attorney General, argued the cause for respondent

(Christopher S. Porrino, Attorney General, attorney; Michael C. Walters, Assistant Attorney General, of counsel; Jeffrey S. Jacobson, Counsel to the Attorney General, on the brief).

The opinion of the court was delivered by

VERNOIA, J.A.D.

In these consolidated appeals arising out of two complaints seeking production of public records under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of access to public records, we consider whether the Superior Court has the authority under N.J.S.A. 47:1A-11 to impose civil penalties for knowing and willful violations of OPRA, and whether the court erred in denying plaintiff's request for relief in aid of litigants' rights under Rule 1:10-3. We conclude the court erred in finding it lacked the authority to impose civil penalties under N.J.S.A. 47:1A-11, and that plaintiff was entitled to relief in aid of litigants' rights. We reverse and remand for further proceedings.

I.

Plaintiff North Jersey Media Group Inc. publishes daily and weekly newspapers and maintains two websites. It appeals a December 16, 2014 order addressing motions filed in two lawsuits that were not consolidated but which the court considered jointly with the consent of the parties.

The lawsuits arose from plaintiff's requests that defendant State of New Jersey Office of the Governor[1] produce records concerning the Port Authority of New York and New Jersey's September 9 to 13, 2013 closures of local traffic lanes from Fort Lee to the George Washington Bridge. The closures caused significant traffic delays in Fort Lee, and led to an investigation by the New Jersey Legislature, and criminal prosecutions of Port Authority employees William Baroni and David Wildstein, and Governor Chris Christie's deputy chief of staff Bridget Kelly.

<u>Plaintiff's December 17, 2013 OPRA Request</u>

On December 17, 2013, plaintiff filed a request with defendant for records under OPRA. The request sought "[c]orrespondence (including but not limited to emails, memos and letters) dated from Aug[ust] 1, 2013 to the present" between Baroni or Wildstein, and Governor Chris Christie, Kevin O'Dowd, Maria Comella, Michael Drewniak, Colin Reed, and Deborah

_____

[1] The complaints also identified fictitiously named defendants. One of the complaints also named as a defendant Ned Nurick, as "Assistant Counsel and Custodian of Public Records For The Office Of The Governor," but the record on appeal does not show Nurick was served with the complaint or that he participated in the proceedings in the trial court. No appearance has been filed on his behalf here. We therefore do not address any issues related to Nurick.

Gramiccioni,[2] "related to the lane closures of the George Washington Bridge during the week of Sept[ember] 9, 2013." Defendant's response to the request was provided in an unsigned December 27, 2013 letter from the "Office of the Governor," stating it "reviewed its records and has not identified any records that are responsive to [the] request," and that "[a]ccordingly, [the] OPRA request is hereby closed."

Plaintiff subsequently obtained from other sources a copy of a September 12, 2013 email concerning the lane closures from Wildstein to Kelly and Drewniak, Governor Christie's press secretary. Wildstein wrote that "[t]he Port Authority is reviewing traffic safety patterns at the George Washington Bridge to ensure proper placement of toll lanes. The [Port Authority Police Department] has been in contact with the [Fort Lee] police throughout this transition." Plaintiff observed that the email was covered by its December 17, 2013 OPRA request, and that although defendant represented it "reviewed its records," it failed to provide the email in response to plaintiff's request.

---

[2] Plaintiff also requested records from anyone acting "on behalf of" the named individuals, "such as an assistant."

<u>Plaintiff's January and February 2014 OPRA Requests</u>

In January and February 2014, plaintiff served defendant with four additional OPRA requests. On January 6, 2014, plaintiff served two requests for records of "[c]ommunications (including but not limited to text messages, emails, memos and letters)" related to the lane closures between fifteen named employees and officials in the Office of the Governor,[3] and Baroni, Wildstein, and Port Authority Executive Director David Samson. On February 2, 2014, plaintiff requested records related to defendant's policies for the use of personal email accounts to conduct official or public business. On February 27, 2014, plaintiff requested defendant's policies related to the use of email correspondence for business and personal use.

From January 14, 2014 to March 28, 2014, plaintiff's and defendant's respective counsel communicated concerning the January and February requests, and defendant's requests for extensions of time to respond. Defendant's counsel advised that the delays in providing responses were the result of defendant's efforts to respond to numerous requests for the same information, including those made by the Legislature and the

---

[3] The individuals were Governor Christie, O'Dowd, Comella, Drewniak, Gramiccioni, Reed, Kelly, Louis Goetting, Charles McKenna, Paul Matey, Matthew McDermott, Lauren Fritts, Rosemary Iannacone, and Kara Walker.

United States Attorney's Office as part of their investigations. Plaintiff was also informed a law firm representing defendant was conducting an investigation of the lane closures that involved reviewing over 250,000 documents and interviewing more than seventy witnesses. Defendant advised plaintiff it would provide documents in response to the January and February OPRA requests as soon as feasible given those circumstances.

On March 27, 2014, the law firm representing defendant advised plaintiff's counsel it issued a report detailing its investigation of the lane closures, with over 3000 pages of exhibits annexed, and that the report and exhibits were available on the law firm's website. On March 28, 2014, defendant provided a putative response to plaintiff's January and February OPRA requests, advising plaintiff that "documents responsive to [the] request[s] may be found at" the website.

The February Action

On February 7, 2014, plaintiff filed a verified complaint (February action) in the Law Division alleging defendant's response to plaintiff's December 17, 2013 request violated OPRA and plaintiff's common law right of access to public records. Plaintiff further alleged defendant's response to the OPRA request constituted part of defendant's ongoing pattern and practice of violating OPRA and denying public access to

government records. Plaintiff sought a declaration that defendant violated OPRA, an award of civil penalties under N.J.S.A. 47:1A-11, an order directing that defendant identify the records custodian who supplied the December 27, 2013 response to the OPRA request, "a sworn statement from any persons involved in handling [the] OPRA request as set forth in Paff v. New Jersey Dep't of Labor, 392 N.J. Super. 334 (App. Div. 2007)," and a "plenary hearing to conduct discovery and resolve factual disputes."[4]

The May Action

On May 9, 2014, plaintiff filed a second verified complaint (May action) alleging defendant violated OPRA and plaintiff's common law right of access to government records in its response to plaintiff's January and February OPRA requests. Plaintiff sought the identical relief requested in the February action.

The Amended Complaint and Order to Show Cause in the February Action

On May 29, 2014, plaintiff filed an amended verified complaint and order to show cause in the February action. The amended complaint repeated the allegations concerning defendant's response to plaintiff's December 17, 2013 OPRA request, and detailed plaintiff's claim that defendant violated

---

[4] Plaintiff also sought other relief not pertinent here.

OPRA in its response to six other requests made by plaintiff in 2013 and 2014, including its January 6, 2014 request for records concerning the lane closures.[5] Plaintiff alleged defendant consistently flouted the requirements of OPRA, "flagrant[ly] disregard[ed] its statutory obligations," and engaged in a pattern and practice of violating OPRA's requirements by

> (i) failing to identify or even acknowledge the existence of public records responsive to [p]laintiff's OPRA requests; (ii) failing to disclose public records responsive to [p]laintiff's OPRA requests; (iii) redacting public information from records provided (over-redacting records); (iv) consistently refusing to provide a Vaughn[6] or similar index to explain the type of any record that they are withholding or to explain redactions to a record they have provided; (v) failing to meet the statutory deadlines and their own self-imposed extensions; and

---

[5] The amended complaint alleged defendant's pattern and practice of failing to comply with OPRA's requirements necessitated the filing of lawsuits in six other matters: North Jersey Media Group Inc. v. Office of the Governor, Docket No. MER-L-1059-14; North Jersey Media Group Inc. v. Office of the Governor, Docket No. MER-L-877-14; North Jersey Media Group Inc. v. Office of the Governor, Docket No. MER-L-67-14; North Jersey Media Group Inc. v. Office of the Governor, Docket No. MER-L-1432-13; North Jersey Media Group Inc. v. New Jersey State Police and Office of the Governor, Docket No. MER-L-310-13; and North Jersey Media Group Inc. v. Office of the Governor, Docket No. MER-L-251-14.

[6] The term "Vaughn index" refers to a list of the records a custodian has identified as responsive to a request and any exemptions that warrant non-disclosure. North Jersey Media Group, Inc. v. Bergen Cty. Prosecutor's Office, 447 N.J. Super. 182, 191 (App. Div. 2016) (citing Vaughn v. Rosen, 484 F.2d 820, 826-27 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S. Ct. 1564, 39 L. Ed. 2d 873 (1974)).

(vi) failing to sign their responses or, otherwise, even identify their custodians in their responses to [p]laintiff's OPRA requests.

The June 3, 2014 Case Management Order

On June 3, 2014, the court held a joint case management conference in the February and May actions. Defendant's counsel claimed defendant provided all of the records responsive to plaintiff's December 17, 2013 and January and February 2014 OPRA requests. Plaintiff's counsel represented that plaintiff had obtained from other sources at least one document that was responsive to the requests, but which defendant failed to provide. Plaintiff's counsel thus argued there was reason to question whether defendant actually conducted a search for the requested records and, if so, whether the search was adequate.

The court entered a June 3, 2014 joint case management order in the February and May actions. In order for defendant to "evaluate the efficacy of [its] own searches," the court directed plaintiff to provide defendant with any documents it obtained from other sources but which were not provided by defendant in response to the OPRA requests. The court also directed that defendant provide sworn statements "explaining its searches for records" responsive to plaintiff's December 17, 2013 and January and February 2014 records requests. The court required that the statements be based on personal knowledge,

"explain the recent search that produced responsive documents as well as defendant['s] initial responses to plaintiff's OPRA requests that did not result in the turnover of any documents," and include the information required by the court in <u>Paff</u>, <u>supra</u>, 392 <u>N.J. Super.</u> at 341.[7] The order permitted defendant to provide multiple sworn statements "to adequately explain the searches in accordance with the personal knowledge requirement."

Defendant provided two certifications in response to the court's June 3, 2014 order: a certification from Drewniak

---

[7] In <u>Paff</u>, we required the records custodian to provide a sworn statement describing:

> (1) the search undertaken to satisfy the request;
>
> (2) the documents found that are responsive to the request;
>
> (3) the determination of whether the document or any part thereof is confidential <u>and</u> the source of the confidential information; [and]
>
> (4) a statement of the agency's document retention/destruction policy <u>and</u> the last date on which documents that may have been responsive to the request were destroyed.
>
> [392 <u>N.J. Super.</u> at 341.]

We also required that the statement include an appendix with "an index of all documents deemed by the agency to be confidential in whole or in part, with an accurate description of the documents deemed confidential." <u>Ibid.</u>

purporting to describe defendant's response to plaintiff's December 17, 2013 request, and a certification from Alexander H. Southwell, a partner at the law firm representing defendant purporting to describe defendant's search for records responsive to the January and February 2014 requests.

Defendant moved to dismiss the complaints in the February and May actions. Plaintiff opposed the motion and cross-moved to: enforce litigants' rights under Rule 1:10-3 based on defendant's alleged failure to supply sworn statements supported by personal knowledge detailing defendant's searches for the records as required by the June 3, 2014 order; strike the Southwell certification because it was not based on personal knowledge; convert the February and May actions into a plenary action and permit plaintiff to conduct discovery; and award attorneys' fees.

The court denied defendant's motion to dismiss the complaint, and granted in part and denied in part plaintiff's cross-motion. The court first addressed the February action and found defendant's search for records in response to the December 17, 2013 OPRA request was "unreasonable" and "inadequate on its face." The court noted that it provided defendant with an opportunity to describe its records search by ordering defendant to supply sworn statements describing its search efforts. The

11

court found defendant provided only Drewniak's affidavit which showed that based on his "strained" interpretation of plaintiff's request, defendant failed to conduct any search for the records requested on December 17, 2013. Defendant did not provide an affidavit describing the search for records it claimed it undertook in its unsigned December 27, 2013 response to plaintiff's request. The court also determined defendant violated OPRA by failing to search for the records requested on December 17, 2013, and by failing to identify the records custodian as required by OPRA.

The court denied plaintiff's request for the imposition of a civil penalty, finding it lacked the authority to impose a penalty under N.J.S.A. 47:1A-11, and that a civil penalty could only be awarded in a proceeding before the Government Records Council (GRC). The court found plaintiff was the prevailing party in the February action and granted plaintiff's request for an award of attorneys' fees on that basis.

The court also addressed the May action and denied plaintiff's motion to strike the Southwell certification, finding it documented a reasonable search for records in response to the January and February 2014 records requests. The court, however, determined plaintiff was entitled to attorneys' fees in the May action because plaintiff's initiation of the

litigation resulted in defendant's production of the requested records.

The court denied plaintiff's motion for relief in aid of litigants' rights under Rule 1:10-3. The court reasoned that the June 3, 2014 order's purpose was to require that defendant supply sworn statements describing its searches for records in response to plaintiff's requests, and determined that purpose was achieved by the Drewniak and Southwell certifications. The court also found that because plaintiff was supplied with records responsive to its requests, relief in aid of litigants' rights was unnecessary.

The court dismissed without prejudice plaintiff's claim that defendant engaged in a pattern and practice of violating OPRA and the common law right of access to public records, and denied plaintiff's requests for discovery and a plenary action. The court determined that further litigation of the claim with the concomitant discovery and plenary hearing was inconsistent with the summary proceedings contemplated under OPRA.

The court memorialized its decision first in an October 28, 2014 joint order in the February and May actions, and then in an amended order on December 16, 2014. The court directed the parties to negotiate the amount of the attorneys' fees due plaintiff. On March 31, 2015, following the parties' agreement

on the attorneys' fee award, the court entered a final order. This appeal followed.

II.

We first address plaintiff's claim the court erred by denying its motion for relief in aid of litigants' rights. Plaintiff argues defendant's submission of the Drewniak and Southwell certifications violated the court's June 3, 2014 order because the certifications were not from defendant's designated records custodians, they failed to explain defendant's searches for the requested records, and the Southwell certification was not based on personal knowledge. Plaintiff also argues that contrary to the court's order, the certifications did not include the information we required in Paff, supra, 392 N.J. Super. at 341.

We defer to the trial court's factual findings when they are "supported by adequate, substantial and credible evidence." Zaman v. Felton, 219 N.J. 199, 215 (2014) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). We review de novo the "trial court's interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Rule 1:10-3 provides a "means for securing relief and

14

allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order." In re N.J.A.C. 5:96, 221 N.J. 1, 17-18 (2015); accord Abbott v. Burke, 206 N.J. 332, 371 (2011). "Relief under Rule 1:10-3 . . . is not for the purpose of punishment, but as a coercive measure to facilitate the enforcement of the court order." Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997). "The particular manner in which compliance may be sought is left to the court's sound discretion." Bd. of Educ. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 509 (Ch. Div. 2001).

We reject plaintiff's argument that defendant violated the court's order because Drewniak and Southwell were not designated records custodians under N.J.S.A. 47:1A-1.1. The court's order did not require that defendant identify a records custodian or that the sworn statements be provided by a records custodian.[8] The order directed that defendant provide sworn statements explaining its searches for records responsive to plaintiff's OPRA requests, that the statements include the information required in Paff, supra, 392 N.J. Super. at 341, and that the

---

[8] Similarly, in Paff, supra, 392 N.J. Super. at 341, we did not require a sworn statement from a designated records custodian, but instead required a sworn statement from the public entity's "personnel."

statements be based on personal knowledge. Accordingly, the fact that Drewniak and Southwell were not designated records custodians under N.J.S.A. 47:1A-1.1 did not render defendant's submission of their certifications a violation of the order and did not permit relief in aid of litigants' rights under Rule 1:10-3.

We also reject plaintiff's argument that submission of Drewniak's certification violated the court's order because the certification did not describe a search for records and did not otherwise provide the information required in Paff. To be sure, and as the court correctly found, Drewniak's certification "did not . . . explain[] the search for records responsive to [plaintiff's December 17, 2013 OPRA] request," and failed to detail "what [defendant] did and didn't do" to search for the requested records. The court, however, determined Drewniak's certification did not violate the June 3, 2014 order because it established that defendant simply did not conduct any search for records responsive to plaintiff's December 17, 2013 request. Indeed, the court relied on Drewniak's certification to support its determination that defendant acted inconsistently with its obligations under OPRA and the common law in its response to plaintiff's December 17, 2013 records request.

The court therefore determined there was no need for relief

16                                                          A-3947-14T3

in aid of litigants' rights to compel compliance with the order's directive that defendant explain its records search because, as Drewniak's certification established, defendant could not explain a search it failed to conduct. Under those circumstances, we are satisfied the record supports the court's conclusion that submission of Drewniak's certification did not violate the order.[9]

Plaintiff also claims the court erred by denying relief under Rule 1:10-3 because the Southwell certification was not based on personal knowledge and did not include, as directed by the court, the information required in Paff. We agree. The court rejected plaintiff's argument and found defendant was confronted with multiple requests for records concerning the lane closures from plaintiff, the Legislature, federal authorities, and others. The court noted it was not the "norm to employ an outside" law firm to conduct a search for public records, and that it was not unreasonable for defendant to have done so under the circumstances presented. The court concluded plaintiff was not entitled to relief under Rule 1:10-3 because Southwell's

---

[9] We recognize the obvious and unexplained contradiction between Drewniak's certification, which states defendant did not conduct a search for records in response to plaintiff's December 17, 2013 request, and defendant's December 27, 2013 response to plaintiff's request, which expressly states that a search for records was conducted and no responsive records were found.

certification adequately described the search conducted on defendant's behalf and established the search was reasonable.

Southwell's certification generally describes his firm's investigation concerning the lane closures "in response to certain subpoenas," but does not describe any personal involvement by him in the search for documents in response to the subpoenas. His firm employed a third-party vendor, which he identifies only as "the expert firm," to search defendant's email exchange server and the personal email accounts of certain of defendant's employees, whom Southwell also failed to identify. According to Southwell, unidentified attorneys at his firm then reviewed the records to determine which documents were responsive to the subpoenas or were pertinent to their investigation.

Southwell also explained his firm first conducted a search for documents responsive to plaintiff's January 6, 2014 requests following the issuance of the firm's March 27, 2014 report.[10] On or about May 8, 2014, his firm was provided with plaintiff's

---

[10] This representation appears contrary to Southwell's firm's March 28, 2014 letter to plaintiff's counsel advising that documents responsive to plaintiff's requests were contained in the firm's report and annexed exhibits. Southwell's certification states that the firm's search for documents responsive to plaintiff's requests did not occur until May 8, 2014, when the firm received plaintiff's requests.

January 6, 2014 requests, but neither he nor anyone at his firm personally undertook a search for the documents. Instead, his firm asked the third-party vendor, the purported "expert firm," to search the database it developed in response to subpoenas for documents responsive to plaintiff's requests.[11] According to Southwell, the "expert firm's" search uncovered only four documents responsive to plaintiff's requests that had not been included in the exhibits attached to his firm's March 27, 2014 report.

Plaintiff correctly argues the Southwell certification did not fully comply with the court's June 3, 2014 order, which required that defendant provide sworn statements based solely on personal knowledge explaining the search for records responsive to plaintiff's requests. Southwell's description of the search is not based on his personal knowledge, nor could it have been, as it was conducted by an unidentified third-party vendor and, at times, unidentified attorneys at his firm.

Submission of the Southwell certification also violated the requirement that the sworn statement provide the information required in <u>Paff</u>, <u>supra</u>, 392 <u>N.J. Super.</u> at 341. The

_____

[11] The Southwell certification does not describe or establish a search of all of defendant's government records in response to the January and February 2014 requests. The Southwell certification details only a search of records that were assembled in response to subpoenas.

certification does not state whether a determination had been made that any document or any part thereof was confidential, and did not include defendant's "document retention/destruction policy" or indicate the last date documents responsive to plaintiff's requests were destroyed as required in Paff and under the court's June 3, 2014 order.

Plaintiff sought relief in aid of litigants' rights under Rule 1:10-3 based on the deficiencies in the Southwell certification, but the court denied the request and found the certification showed defendant's search for the records was reasonable. We are convinced the court abused its discretion in reaching that conclusion.

An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). Here, defendant's submission of the Southwell certification violated the unambiguous requirements of the June 3, 2014 order, which plaintiff sought to enforce in its Rule 1:10-3 motion. The court's failure to consider defendant's clear violations of the order was without any explanation, and

overlooked the purpose of <u>Rule</u> 1:10-3: ensuring compliance with court orders. <u>Ridley</u>, <u>supra</u>, 298 <u>N.J. Super.</u> at 381.

Moreover, the court's denial of plaintiff's <u>Rule</u> 1:10-3 motion rested on an impermissible basis. The court denied the motion because it determined Southwell described a reasonable search for the records plaintiff requested. But Southwell's description of the search was not based on his personal knowledge and, therefore, the record is bereft of any competent evidence supporting the court's determination that defendant's search for the records requested in January and February 2014 was reasonable and compliant with its obligations under OPRA and the common law. <u>See</u> <u>R.</u> 1:6-6 ("If a motion is based on facts not appearing of record or not judicially noticeable, the court may hear it on affidavits made on personal knowledge . . . ."); <u>Allen v. World Inspection Network Intern., Inc.</u>, 389 <u>N.J. Super.</u> 115, 121 (App. Div. 2006) (finding plaintiffs failed to submit "competent evidence" where the complaint was not properly verified because it was not based on personal knowledge), <u>certif. denied</u>, 194 <u>N.J.</u> 267 (2007).

Therefore, we are constrained to reverse the court's December 16, 2014 order denying plaintiff's motion for relief in aid of litigants' rights as it pertains to defendant's failure to provide a sworn statement based on personal knowledge

explaining its search for records in response to plaintiff's January and February 2014 requests. On remand, the court shall enter an order pursuant to <u>Rule</u> 1:10-3 requiring defendant to supply the sworn statements based on personal knowledge explaining the records search and otherwise satisfying the requirements of the June 3, 2014 order.

We also observe that the court relied on the Southwell certification to support its dismissal of plaintiff's complaint in the May action. The court determined the Southwell certification detailed a reasonable search in response to plaintiff's January and February 2014 requests, and that the search was therefore compliant with defendant's obligations under OPRA and the common law. Because we are convinced the court could not properly rely on Southwell's certification to support its conclusion defendant's search was compliant with OPRA and the common law, there was insufficient credible evidence supporting the court's finding that defendant's search for records was reasonable. We therefore vacate the order dismissing plaintiff's complaint in the May action, and remand for further proceedings based on competent evidence.

### III.

Plaintiff next claims the court erred by denying its motion for the imposition of civil penalties under <u>N.J.S.A.</u> 47:1A-11.

The court denied the motion finding it lacked authority to impose civil penalties because the statute permits the imposition of penalties only in a proceeding before the GRC. Plaintiff contends N.J.S.A. 47:1A-11 vests the Superior Court with the authority to impose civil penalties where there is a knowing and willful violation of OPRA and an unreasonable denial of access to public records under the totality of the circumstances presented. We are persuaded by plaintiff's arguments.

A "trial court's determinations with respect to the applicability of OPRA are legal conclusions subject to de novo review." K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 349 (App. Div. 2011) (quoting O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 379 (App. Div. 2009)), certif. denied, 210 N.J. 108 (2012); accord Paff v. Ocean Cty. Prosecutor's Office, 446 N.J. Super. 163, 175 (App. Div.), certif. granted, 228 N.J. 403 (2016); Drinker Biddle & Reath LLP v. N.J. Dep't. of Law & Pub. Safety, 421 N.J. Super. 489, 497 (App. Div. 2011); MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 543 (App. Div. 2005). "Our standard of review is plenary with respect to [a trial court's] interpretation of OPRA and its exclusions." Gilleran v. Twp. of Bloomfield, 440 N.J. Super. 490, 497 (App. Div. 2015), rev'd on other grounds, 227 N.J. 159

(2016); see also State v. Goodwin, 224 N.J. 102, 110 (2016) ("In construing the meaning of a statute, our review is de novo.").

"The purpose of OPRA 'is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 535 (2005) (quoting Asbury Park Press v. Ocean Cty. Prosecutor's Office, 374 N.J. Super. 312, 329 (Law Div. 2004)). "In enacting OPRA, the Legislature intended to bring greater transparency to the operations of government and public officials." Paff v. Galloway Twp., ___ N.J. ___, ___ (2017) (slip op. at 15); see also Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012).

OPRA provides that where a person's request for government records is denied, the requester has the option of challenging the denial in one of two forums: by "filing an action in Superior Court" or "a complaint with the [GRC]." N.J.S.A. 47:1A-6; Mason v. City of Hoboken, 196 N.J. 51, 68 (2008). Challenges filed in the Superior Court and the GRC "shall proceed in a summary or expedited manner" and where "it is determined that access was improperly denied the court or [GRC] shall order that access be allowed." N.J.S.A. 47:1A-6.

OPRA also authorizes the imposition of civil penalties:

> A public official, officer, employee or custodian who knowingly and willfully violates [OPRA] as amended and supplemented, and is found to have unreasonably denied access under the totality of the circumstances, shall be subject to a civil penalty . . . . [The] penalty shall be collected and enforced in proceedings in accordance with the "Penalty Enforcement Law of 1999," P.L. 1999, c. 274 [N.J.S.A. 2A:58-10 to -12], and the rules of court governing actions for the collection of civil penalties. The Superior Court shall have jurisdiction of proceedings for the collection and enforcement of the penalty imposed by this section.
>
> [N.J.S.A. 47:1A-11.]

Here, the court determined N.J.S.A. 47:1A-11 does not permit imposition of civil penalties by the Superior Court. The judge first found that N.J.S.A. 47:1A-7, which defines the powers, duties and jurisdiction of the GRC, expressly grants the GRC the authority to impose civil penalties. See N.J.S.A. 47:1A-7(e). The judge reasoned that because OPRA does not include a similar express grant of authority to the Superior Court, N.J.S.A. 47:1A-11 does not permit the Superior Court to impose civil penalties. Second, the court found that an interpretation of N.J.S.A. 47:1A-11 permitting the Superior Court to impose civil penalties is inconsistent with OPRA's requirement that challenges to records request denials be addressed in a "summary" manner. For the reasons that follow, we reject the court's reasoning and conclude N.J.S.A. 47:1A-11 permits the

Superior Court to impose a civil penalty where appropriate under the statutory standard.

In our interpretation of N.J.S.A. 47:1A-11, our goal "is to ascertain and effectuate the Legislature's intent." State v. Olivero, 221 N.J. 632, 639 (2015); see also Sussex Commons Assocs., LLC, supra, 210 N.J. at 540-41 (finding court's obligation in interpreting OPRA "is to determine and carry out the Legislature's intent"). We first "look at the plain language of the statute," Sussex Commons Assocs., LLC, supra, 210 N.J. at 541, because it "is typically the best indicator of intent," In re Plan for the Abolition of the Council on Affordable Hous., 214 N.J. 444, 467 (2013); accord Gilleran, supra, 227 N.J. at 171-72; DiProspero v. Penn, 183 N.J. 477, 492 (2005). Moreover, we "read and construe[]" the words and phrases of the statute "with their context," giving them "their generally accepted meaning, according to the approved usage of the language," "unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated." N.J.S.A. 1:1-1; State v. Regis, 208 N.J. 439, 447 (2011).

The first sentence of N.J.S.A. 47:1A-11 authorizes the imposition of a civil penalty, and establishes the standard for the assessment of a penalty. It does not authorize only the GRC to impose a civil penalty, or prohibit the Superior Court from

doing so. To the contrary, the first sentence of N.J.S.A. 47:1A-11 conditions the award of a civil penalty only upon the making of two findings: that there is a knowing and willful violation of OPRA, and an unreasonable denial of access to the requested government records under the totality of the circumstances. N.J.S.A. 47:1A-11; Bart v. Passaic Cty. Pub. Hous. Agency, 406 N.J. Super. 445, 452 (App. Div. 2009).

The Legislature established only two forums with jurisdiction to make the findings necessary for an award of a civil penalty under N.J.S.A. 47:1A-11: the Superior Court and the GRC. N.J.S.A. 47:1A-6. In setting the standard for an award of a civil penalty in the first sentence of N.J.S.A. 47:1A-11, the Legislature did not mandate that the requisite findings be made in a particular forum, did not authorize only the GRC to make the findings, and did not prohibit the Superior Court from making the findings necessary for the imposition of a civil penalty.

Having established two forums for the adjudication of challenges to government records requests denials, the Legislature could have chosen to expressly limit the forum in which the requisite findings for the imposition of a civil penalty could be made, but it elected not to do so. We therefore discern nothing in the first sentence of N.J.S.A. 47:1A-11

limiting the jurisdiction to impose a civil penalty to the GRC, and it is not our role to "rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language." DiProspero, supra, 183 N.J. at 492 (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). We also will not "'write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment,' or 'engage in conjecture or surmise which will circumvent the plain meaning of the act.'" Ibid. (first quoting Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952); then quoting In re Closing of Jamesburg High School, 83 N.J. 540, 548 (1980)).

Defendant ignores the plain language of the first sentence of N.J.S.A. 47:1A-11 and argues the statute vests the GRC with the exclusive jurisdiction to impose a civil penalty because N.J.S.A. 47:1A-7, which establishes and defines the powers and duties of the GRC, expressly provides that the GRC may impose a civil penalty. More particularly, N.J.S.A. 47:1A-7(e) provides that if the GRC "determines, by a majority vote of its members, that a custodian has knowingly and willfully violated [OPRA] . . ., and is found to have unreasonably denied access under the totality of the circumstances, [it] may impose" a civil penalty under N.J.S.A. 47:1A-11. Defendant contends that because OPRA

does not contain a similar express grant of authority to the Superior Court, it can be reasonably inferred the Superior Court does not have the authority to impose a civil penalty under N.J.S.A. 47:1A-11. We disagree.

The plain language of N.J.S.A. 47:1A-7(e) does not grant the GRC the exclusive authority to impose a civil penalty under N.J.S.A. 47:1A-11, and does not limit the Superior Court's authority to impose a civil penalty. N.J.S.A. 47:1A-7(e) authorizes the GRC to impose a civil penalty only "as provided for in N.J.S.A. 47:1A-11." Thus, by its express terms, N.J.S.A. 47:1A-7(e) does not define the forum in which a civil penalty may be assessed under N.J.S.A. 47:1A-11, or modify the jurisdiction to impose a civil penalty as provided under N.J.S.A. 47:1A-11. Instead, N.J.S.A. 47:1A-7(e) simply authorizes the GRC to impose a civil penalty as permitted under N.J.S.A. 47:1A-11.

Moreover, the language in N.J.S.A. 47:1A-7(e) relied upon by defendant cannot be read in isolation. It is one part of a broader statute, N.J.S.A. 47:1A-7(a)-(g), which establishes the GRC and defines its duties, powers and jurisdiction. When viewed in that context, the language in N.J.S.A. 47:1A-7(e) establishes that the GRC's powers include the authority to impose a civil penalty in accordance with N.J.S.A. 47:1A-11. As noted, however,

A-3947-14T3

there is nothing in N.J.S.A. 47:1A-7(e) or N.J.S.A. 47:1A-11 granting exclusive authority to the GRC.

In addition, N.J.S.A. 47:1A-7(e) supports the conclusion the GRC does not have exclusive jurisdiction to impose a civil penalty and that the Superior Court also has jurisdiction to impose a penalty. N.J.S.A. 47:1A-7(e) narrowly grants the GRC the authority to impose a civil penalty. The statute provides that the GRC may impose a civil penalty where it determines a "custodian" violated OPRA willfully and knowingly. N.J.S.A. 47:1A-7(e).

In contrast, N.J.S.A. 47:1A-11 more broadly permits the award of a civil penalty where "[a] public official, officer, employee or custodian" knowingly or willfully violates OPRA. As such, N.J.S.A. 47:1A-7(e) does not expressly grant the GRC the authority to impose a civil penalty in all of the circumstances for which a penalty may be imposed under N.J.S.A. 47:1A-11.

We reject defendant's reliance on N.J.S.A. 47:1A-7(e) as support for its argument that only the GRC is authorized to impose a civil penalty under N.J.S.A. 47:1A-11. To accept defendant's interpretation would render meaningless the language in N.J.S.A. 47:1A-11 permitting the imposition of a penalty based on the actions of public officials, officers and employees. See State in the Interest of K.O., 217 N.J. 83, 91

(2014) ("when construing the Legislature's words, every effort should be made to avoid rendering any part of the statute superfluous"); Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418-19 ("we do not assume that the Legislature used any unnecessary or meaningless language"). Because N.J.S.A. 47:1A-7(e) does not authorize the GRC to impose a civil penalty under N.J.S.A. 47:1A-11 based on the actions of public officials, officers and employees, the only logical conclusion, as supported by the plain language of the first sentence of N.J.S.A. 47:1A-11, is that the Legislature vested the Superior Court with the jurisdiction to do so.

We also reject defendant's assertion that N.J.S.A. 47:1A-11 permits only the GRC to impose a civil penalty because the statute provides that a penalty "shall be collected and enforced in proceedings in accordance with the 'Penalty Enforcement Act of 1999'" (PEA), N.J.S.A. 2A:58-10 to -12, "and the rules of court governing actions for collection of civil penalties," and further states "[t]he Superior Court shall have jurisdiction of proceedings for the collection and enforcement of the penalty imposed by this section." Although the PEA provides for the entry of a final order on the judgment docket for civil penalties awarded by an administrative agency, N.J.S.A. 2A:58-10, it also authorizes the Superior Court to collect and enforce

a civil penalty where, as here, a statute directly authorizes the court to impose a civil penalty, N.J.S.A. 2A:58-11(a)-(f).

Defendant relies on our decision in State v. Tri-Way Kars, Inc., 402 N.J. Super. 215, 220-23 (App. Div.), certif. denied, 197 N.J. 259 (2008), where we considered whether a municipal court had jurisdiction to impose a penalty under a Consumer Fraud Act[12] (CFA) provision stating that municipal courts "shall have jurisdiction of proceedings for the collection and enforcement of a penalty imposed because of [a] violation" of the CFA. See N.J.S.A. 56:8-14. We decided that municipal courts did not have jurisdiction under N.J.S.A. 56:8-14 to impose the penalty because the CFA regulations vested the director of the Division of Consumer Affairs with the exclusive authority to impose the penalty at issue. Tri-Way Kars, supra, 402 N.J. Super. at 223. We thus read the language in N.J.S.A. 56:8-14 to grant municipal courts jurisdiction only to collect and enforce, but not impose, the CFA penalty. Ibid.

Our holding in Tri-Way Kars is inapposite here. OPRA does not vest the GRC with exclusive jurisdiction to impose a civil penalty under N.J.S.A. 47:1A-11. For the reasons noted, the Superior Court has jurisdiction to impose a civil penalty and

---

[12] The Consumer Fraud Act is codified at N.J.S.A. 56:8-1 to -166.

thus, unlike in Tri-Way Kars, the language in N.J.S.A. 47:1A-11 permitting the collection and enforcement of an OPRA civil penalty does not define the limits of the Superior Court's jurisdiction. Instead, the language simply provides a means of collection and enforcement of a civil penalty the Superior Court and GRC are each otherwise authorized to impose.

Defendant asserts that an interpretation of N.J.S.A. 47:1A-11 permitting the Superior Court to impose a civil penalty runs afoul of the requirement that OPRA "proceeding[s] shall proceed in a summary or expedited manner." N.J.S.A. 47:1A-6. The assertion is contradicted by the plain language of N.J.S.A. 47:1A-11, which provides for a trial to resolve issues of fact related to the imposition of a civil penalty and allows for the conversion of a summary action into a plenary proceeding where appropriate.

N.J.S.A. 47:1A-11 provides that a penalty shall be collected and enforced in accordance with the PEA and "the rules of court governing actions for the collection of civil penalties." Under the PEA, a court authorized to impose a civil penalty is required to "decide the case in a summary manner without a jury,"[13] but requires that the court "hear testimony on

_____

[13] The statute includes an exception to the requirement that is not applicable here. The court is required to "decide the case
(continued)

any factual issues." N.J.S.A. 2A:58-11. Similarly, our Rules require the court in a summary action to "hear the evidence" to determine any genuine factual issues, and permit the conversion of the matter into a plenary action where good cause is shown. R. 4:67-5; see also Cent. State Bank v. Hudik-Ross Co., 164 N.J. Super. 317, 324 (App. Div. 1978) (finding that Rule 4:67-5 permits a court to direct that a matter brought on an order to show cause proceed as a plenary action). Thus, contrary to defendant's claim, resolution of factual disputes at a hearing and conversion of a civil penalty proceeding into a plenary action are wholly consistent with the requirements for the imposition of a civil penalty under N.J.S.A. 47:1A-11.

Although our interpretation of N.J.S.A. 47:1A-11 is required by its plain language, it is also consistent with OPRA's underlying policy "to maximize public knowledge about public affairs in order to ensure an informed citizenry[,] [] to minimize the evils inherent in a secluded process," O'Boyle v. Borough of Longport, 218 N.J. 168, 184 (2014) (quoting Mason, supra, 196 N.J. at 64), and to "protect[] [] the public interest," Sussex Commons Assocs., LLC, supra, 210 N.J. at 541 (quoting N.J.S.A. 47:1A-1). OPRA enables "citizens and the media

_____

(continued)
in a summary manner without a jury unless otherwise provided in the statute imposing the penalty." N.J.S.A. 2A:58-11(c).

[to] play a watchful role in curbing wasteful government spending and guarding against corruption and misconduct." Burnett v. Cty. of Bergen, 198 N.J. 408, 414 (2009).

N.J.S.A. 47:1A-11 provides a valuable means to compel compliance with OPRA by public officials, officers, employees and records custodians who might otherwise flout OPRA's requirements and willfully and knowingly deprive the public of access to government records. The civil penalties permitted under N.J.S.A. 47:1A-11 help ensure that records at all levels of government, including the highest levels of our State government, are not willfully and knowingly withheld in an effort to shroud possible wrongdoing from the public's view or deny access to government records to which every citizen is entitled. It is inconsistent with the plain language of N.J.S.A. 47:1A-11 and OPRA's purpose to shield the recalcitrance and obfuscation of public officials, officers, custodians and employees from the imposition of a civil penalty simply because a requester opted to seek redress in a court of law rather than with the GRC. We are convinced the motion court erred by concluding otherwise, and by dismissing plaintiff's claims for

the imposition of a civil penalty in the February and May actions.[14]

Thus, we vacate the dismissal of the February and May actions, and reverse the court's order determining it was without jurisdiction to impose a civil penalty under N.J.S.A. 47:1A-11 and dismissing plaintiff's claims for a civil penalty in the February and May actions. We remand for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[14] We disagree with defendant's contention that there is no basis to impose a civil penalty because the court did not find either a willful and knowing violation of OPRA or that there was an unreasonable denial of access to the requested records under the totality of the circumstances presented. See N.J.S.A. 47:1A-11. The court did not make findings of fact under N.J.S.A. 47:1A-11 because it concluded it lacked jurisdiction to impose a civil penalty under the statute. The findings required for a determination as to whether a civil penalty should be imposed in the February and May actions shall be made by the court based on the evidence presented on remand. We offer no opinion on the merits of plaintiff's request for a civil penalty in either of the actions. We also express no opinion on whether discovery should be permitted, but rather leave that issue for the trial court to consider in light of our ruling that N.J.S.A. 47:1A-11 allows it to impose civil penalties.