**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3696-20

GREEN TREE SERVICING, LLC,

    Plaintiff-Respondent,

v.

LINDA WAGONER,

    Defendant-Appellant,

and

MR. WAGONER, husband of
LINDA WAGONER, MICHAEL
WAGONER and MRS. WAGONER,
wife of MICHAEL WAGONER,

    Defendants.

_____

Submitted September 20, 2022 – Decided October 4, 2022

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. F-054322-14.

Stratton Ashtyani, LLP, attorneys for appellant (Nima Ashtyani, on the briefs).

Akerman LLP, attorneys for respondent (James Ng and Erica R. S. Goldman, on the brief).

PER CURIAM

In this residential mortgage foreclosure action, defendant Linda Wagoner appeals from two post-judgment orders that: (1) denied her motion to enforce litigant's rights; and (2) denied her motion to join Shellpoint Mortgage Servicing (Shellpoint) and the Federal Home Loan Mortgage Corporation (Freddie Mac) as defendants. We affirm.

We take the following facts from the unusual and incomplete record in this matter. On September 6, 2006, Linda Wagoner and Michael Wagoner[1] borrowed the sum of $256,400 from First Horizon Home Loan Corporation (First Horizon), to be initially repaid at the rate of $1,442.25 per month. The debt was secured by a non-purchase money mortgage affecting a residence in Wayne. The interest rate on the mortgage was subject to an adjustable-rate rider. The note and mortgage were serviced by Everhome Mortgage (Everhome).

The mortgage contains an acceleration clause that granted the lender, its servicing agent, and its assigns, the option to declare the entire balance owed on

---

[1] Because the borrowers share the same surname, we refer to them individually by their first names and collectively as defendants. We intend no disrespect in doing so. Michael has not participated in this appeal.

the loan, including unpaid interest and any other charges, "if any installment payment of interest and principal, taxes and/or insurance premiums" fell thirty days past due.

Defendants initially defaulted on the mortgage in March 2009. By this point, Freddie Mac was the owner of the mortgage. Linda applied to Everhome for a loan modification. Everhome offered a Home Affordable Modification Trial Period Plan which represented "an estimate of the payment[s] that [would] be required under the modified loan terms." Under the plan, Defendants would make mortgage payments in the amount of $1,265.84 per month in June, July, and August 2009. If those payments were made in a timely fashion, Everhome would provide a permanent loan modification.

Defendants accepted and completed the Trial Period Plan. Because Everhome's underwriting took longer than expected, a permanent loan modification was not immediately executed.[2] Consequently, defendants continued to make mortgage payments at the Trial Period Plan rate for the months of September 2009 through January 2010. Because the modified loan

---

[2] Everhome states that the underwriting delay was due to "the overwhelming response to the treasury modification plan in 2009."

A-3696-20

terms had not yet been determined, Everhome held the post-trial period payments in suspense.

A permanent loan modification agreement was executed on December 11, 2009, with the first modified payment retroactively due on December 1, 2009. The modification increased the principal balance to $279,173.96 and the monthly mortgage payment to $1,265.92. The modification also changed the interest rate to two percent for the first five years, three percent for the sixth year, four percent for the seventh year, and 4.875 percent thereafter until the November 1, 2049 maturity date. No new monies were advanced.

Upon execution of the loan modification agreement, Everhome applied the funds held in suspense to the December 2009 through March 2010 mortgage payments. According to the trial court, however, defendants made additional payments during those months, resulting in several "double" payments.

From 2010 to 2014, defendants consistently made both short and late payments on the loan, resulting in escrow deficiencies and monthly mortgage payment fluctuations. In May 2014, defendants defaulted on the loan, and First Horizon transferred servicing of the loan to Green Tree Servicing, LLC (Green Tree). In July 2014, defendants were served with a notice of intent to foreclose, which called for payment of $3,591.84 by August 15, 2014. Linda continued to

make payments on the loan thereafter, but ultimately fell $781.38 short of the cure amount.

On August 30, 2014, following expiration of the foreclosure deadline, Linda made another payment, which Green Tree used to satisfy the May 1, 2014 mortgage installment, bringing the account due for June 1, 2014. At this point, Green Tree returned the remaining funds held in suspense, and defendants made no further mortgage payments.

On December 31, 2014, Green Tree filed this foreclosure action. Linda filed an answer in February 2015, admitting default, but contesting Green Tree's right to foreclose on the property. In August 2015, Green Tree changed its name to Ditech Financial LLC (Ditech) and Ditech was substituted as plaintiff.

The case proceeded to trial. At trial, Ditech presented extensive testimony by Thomas Krehl, whose position is not identified in the record.[3] On April 15, 2016, the trial court issued a judgment and written opinion dismissing the complaint with prejudice because plaintiff had failed "to sustain [its] burden of proof to establish . . . the amount of indebtedness and non-payment of the mortgage." The court noted it was possible that Linda was "not . . . actually in default at the time the [notice of intent to foreclose] was mailed on July 11,

---

[3] The record does not include the transcript of the trial.

A-3696-20

2014[,] . . . [or] on the cure date of August 15, 2014." The court reasoned that Ditech had failed to show that Linda's "double payment[s]" were "properly credited," and that even Ditech's own witness appeared "confused" on the matter. Since the total of those payments was "greater than the $3,591.84 cure amount," the court concluded that Ditech was "unable to prove . . . that [Linda] actually defaulted on the mortgage."

The court ordered Ditech and Linda to "enter into a new installment payment schedule under the existing mortgage whereby [Linda] will continue to make monthly mortgage payments at an amount similar to that paid monthly prior to the default which forms the basis of [the action]." The judgment barred Ditech from bringing further foreclosure actions for any default that occurred before the date of the judgment. The judgment preserved Ditech's right to legally contest the note. The judgment further provided that Ditech was not barred from filing a future foreclosure action if "[Linda] defaults on the payment schedule to be established by the parties[.]" The parties did not appeal from the judgment.

In December 2016, Ditech offered, and Linda rejected, a loan modification with monthly payments of $1,672.72. In June 2017, servicing of the loan transferred from Ditech to Shellpoint. By this point, it appears that ownership

A-3696-20

had also transferred, as Shellpoint began identifying New Penn Financial, LLC (New Penn) as the "owner" of the loan and "[l]ender."  In August 2017, following Linda's continued default, Shellpoint issued a notice of intent to foreclose.

On December 6, 2017, Linda filed a complaint in federal district court against Everhome, Ditech, Shellpoint, New Penn, and Freddie Mac.  Linda identified Freddie Mac as the current or previous owner of the loan.[4] (Da139).  Linda alleged:  violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 to -1692p; violation of the Real Estate Settlement Procedure Act (RESPA), 12 U.S.C. §§ 2601 to -2617; breach of contract; violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20; violation of the covenant of good faith and fair dealing; intentional infliction of emotional distress; and fraud.  On May 15, 2018, the district court issued an order and opinion dismissing the FDCPA and RESPA claims on the merits and dismissing the state law claims for lack of subject matter jurisdiction.  There is no indication that Linda appealed the dismissal.

---

[4]  The ownership timeline as it relates New Penn and Freddie Mac is not clear.

In June 2018, Linda filed a motions to enforce litigant's rights and to join Shellpoint and Freddie Mac as defendants in the previously dismissed foreclosure action.

In December 2018, Shellpoint offered a loan modification to Linda with monthly payments of $1,465.77, which Linda rejected.  Linda argued that the modification offers did not satisfy the trial court's original order because: (1) a modification is not the proper remedy; (2) despite the trial court finding that the amount of indebtedness needed to be established, Ditech and Shellpoint's modification offers did not address the issue; (3) First Horizon did not apply trial period payments held in suspense to Linda's principal, as required by the 2009 modification agreement; (4) the modification offers did not address escrow deficiencies and mortgage payment fluctuations, which according to Linda, were caused by Green Tree's misapplication of tax payments; and (5) the court cannot force Linda to accept modification offers. Linda also argued that by returning payments in 2014, Ditech waived its right to future payments.

The motions remained pending due to adjournment requests and the COVID-19 pandemic.  On July 8, 2021, the trial court heard oral argument and issued two orders and an oral decision denying Linda's motions.

 A-3696-20

The trial court found that the submitted filings were "conflicting," and that therefore, it needed to conduct a "full evidentiary hearing" to determine "who paid what and when," and if "the numbers that [Ditech] offered after [the original] order were . . . in keeping with the spirit of what [the trial judge] intended." The court also noted that the original foreclosure action had been dismissed with prejudice five years earlier and, therefore, the parties had to "press the reset button" and file "a new foreclosure complaint." Finally, the court rejected the claim that the lender had somehow waived several years of mortgage payments because they returned a payment, noting the mortgage itself provides: "Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." The mortgage further provides: "Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future."

This appeal followed. While this appeal was pending, Shellpoint served Linda with a notice of intention to foreclose dated September 14, 2022. Linda moved to supplement the record, which Shellpoint opposed. On September 22, 2022, we denied the motion because the new notice of intent to foreclose was not germane to the issues on appeal.

Linda raises the following points for our consideration:

POINT ONE

THE COURT ERRED WHEN IT DENIED THE MOTION TO ENFORCE LITIGANT'S RIGHTS.

A. The Court Erred When It Held That Plaintiff Did Not Waive Payments Tendered By Ms. Wagoner.

POINT TWO

THE COURT ERRED WHEN IT DENIED MS. WAGONER'S MOTION TO JOIN SHELLPOINT AND FREDDIE MAC AS PARTIES.

We review a trial court's decision to grant or deny a motion to enforce litigant's rights for abuse of discretion. N. Jersey Media Grp. Inc. v. State, Off. of the Governor, 451 N.J. Super. 282, 299 (App. Div. 2017). We likewise review a trial court's decision to grant or deny a motion for joinder for abuse of discretion. N.J. Dep't of Env't Prot. v. Standard Tank Cleaning Corp., 284 N.J. Super. 381, 393 (App. Div. 1995).

An abuse of discretion occurs where the trial court's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." N. Jersey Media Grp., 451 N.J. Super. at 299 (quoting US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)). "When examining a trial court's exercise of discretionary authority, we reverse

only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

We first address Linda's motion to enforce litigant's rights. Motions to enforce litigant's right are governed by Rule 1:10-3, which "provides a 'means for securing relief and allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order.'" N. Jersey Media Grp., 451 N.J. Super. at 296 (quoting In re N.J.A.C. 5:96, 221 N.J. 1, 17-18 (2015)). "Relief under Rule 1:10-3 . . . is not for the purpose of punishment, but as a coercive measure to facilitate the enforcement of [a] court order." Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997). "The particular manner in which compliance may be sought is left to the court's sound discretion." N. Jersey Media Grp., 451 N.J. Super at 296 (quoting Bd. of Educ. of Middletown v. Middletown Twp. Educ. Ass'n, 352 N.J. Super. 501, 509 (Ch. Div. 2001)).

Here, Ditech and Shellpoint attempted to reach a mortgage modification agreement that included a monthly payment level comparable to the original monthly installment. Both payment schedules were rejected by Linda. There is no evidence in the record that she extended any counteroffers. She cannot avoid

11

foreclosure by refusing to execute a modification agreement that incorporates a payment schedule similar to the prior payment level as contemplated by the trial court. Even so, neither Ditech nor Shellpoint filed any pleadings to attempt to enforce the mortgage as previously modified. They did not refuse to comply with the judgment.

Moreover, the underlying foreclosure action was dismissed with prejudice in April 2016. Although Shellpoint sent Linda a notice of intent to foreclose dated August 25, 2017, there is no indication in the record that it filed a new mortgage foreclosure complaint or an application to reopen the dismissed action. Therefore, Linda's motion to enforce litigant's rights was premature and speculative as it attempted to address an alleged violation that had not yet occurred. The trial court correctly denied the motion.

We next address Linda's argument that by returning payments in June 2014, Green Tree waived its right to payments thereafter. The trial court rejected this argument because the mortgage allowed the lender to return any payment that was "insufficient to bring the loan current." That clause, known as an acceleration clause, is widely contained in residential mortgages and enforceable.

12

Linda's reliance on N.J.S.A. 12A:3-603(b) is misplaced. N.J.S.A. 12A:3-603(b) expressly provides that "[i]f tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender." The statute does not discharge payment arrears beyond the payment tendered. Here, $2,685.50 was tendered in 2014. The judgment only affected arrears accruing before April 15, 2016. The tender in 2014 did not affect monthly installments that fell due after April 15, 2016.

Finally, we address Linda's motion to join Shellpoint and Freddie Mac as defendants. Generally, Rule 4:28-1 governs the joinder of parties, establishing criteria for mandatory joinder and indispensable parties. However, Rule 4:6-3 requires that a motion for joinder "shall be heard and determined before trial on application of any party, unless the court for good cause orders that the hearing and determination thereof be deferred until the trial." Linda's joinder motion was filed some five years after the trial court dismissed Ditech's complaint with prejudice. The trial court correctly denied the motion as untimely.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-3696-20