KOBLITZ, J.A.D.
*1059 *51 Defendant Kurt Baur and his wife Kristi Baur[1] appeal from a September 16, 2016 order denying Kurt and Kristi's motion to vacate a bank levy and from a September 26, 2016 order granting plaintiff Banc of America Leasing & Capital, LLC's (BOA) motion to turn over the funds in a joint account in the names of Kurt and Kristi. Kristi is neither a judgment debtor nor a party to the underlying debt.[2] We reverse because the court did not require BOA to demonstrate that the funds levied belonged to Kurt alone.
BOA obtained a default judgment in the State of Michigan on July 15, 2015, in the sum of $361,093.47, plus interest, against *52 defendants Fletcher-Thompson Inc. (F-T), Kurt, and Michael Marcineck pursuant to a lease between BOA and F-T, guaranteed by Kurt and Marcineck. BOA domesticated and registered the Michigan judgment in New Jersey in September 2015. A writ of execution for a bank levy was issued to the Mercer County Sheriff, who served it on PNC Bank. The levy froze the funds of a joint account held in both Kurt and Kristi's names in the amount of $20,523.83 in January 2016. Kristi claims that the funds in the joint account are her personal property derived primarily from her pension, as well as her earnings and tax refunds.
BOA filed a motion for turnover of the levied funds, which both Kurt and Kristi opposed. Before the motion court ruled on the motion, however, BOA and defendants entered into a consent order.
The consent order states in pertinent part:
1. The funds levied from the bank account of the Defendant, Kurt Baur, at PNC Bank, in the amount of $20,523.83, shall be replaced by the Defendants, with other funds of the Defendants in the same amount ("replacement funds"), within thirty (30) days from the date hereof, by wire transfer .... Upon receipt of the wire transfer, the levied funds shall be released by Plaintiff's counsel back to the Defendants. The levied funds shall remain frozen until Plaintiff's counsel has confirmed that the wire transfer of the replacement funds has been received ....
2. Defendants shall remit the sum of $25,000 per quarter ... by wire transfer ... until Plaintiff's Judgment is paid in full; and
3. The Defendants shall also remit the sum of $6,000 per month, by wire transfer ... commencing on May 1, 2016, also until Plaintiff's Judgment is paid in full;
Defendants defaulted on their agreement to make payments and BOA filed a new motion for turnover of the levied funds. Kurt and Kristi once again opposed the motion and filed a motion to vacate the levy, again claiming that the funds held in the joint account belonged exclusively to Kristi, and were primarily exempt pension payments.
Without allowing the requested oral argument, the motion court entered an order denying the Baurs's motion to vacate the levy and later granted BOA's motion for a turnover of the levied funds. The motion court wrote only the following in its September 26 order:
*1060 *53 There was an agreement reached by the parties to avoid turnover of the funds. The terms of the agreement appear to have been breached and so turnover is granted. This motion was opposed by way of a cross-motion which was denied.
A turnover of funds held by a third party may proceed if the third party admits owing the funds to the judgment debtor. N.J.S.A. 2A:17-63 states:
After a levy upon a debt due or accruing to the judgment debtor from a third person, herein called the garnishee, the court may upon notice to the garnishee and the judgment debtor, and if the garnishee admits the debt, direct the debt, to an amount not exceeding the sum sufficient to satisfy the execution, to be paid to the officer holding the execution or to the receiver appointed by the court ....
Unquestionably, when seeking a turnover from a joint account, the judgment creditor has the burden "to prove that the moneys thus deposited are the individual property of the judgment debtor, and therefore applicable to the satisfaction of the judgment." Esposito v. Palovick, 29 N.J. Super. 3, 10-11, 101 A.2d 568 (App. Div. 1953) (quoting Winchell v. Clayton, 133 N.J.L. 168, 169, 43 A.2d 267 (Sup. Ct. 1945) ). In Esposito, we upheld the order vacating a levy and releasing the funds in a joint account held by husband and wife where the judgment was solely against the wife. Id. at 11, 101 A.2d 568. The proofs showed the funds deposited into the joint account came solely from the husband's earnings, and the husband had not intended to gift the wife the funds. Id. at 6, 101 A.2d 568. We thus held, many decades ago, that it could not be presumed "that one depositing his [or her] own funds in a joint account in the names of himself [or herself] and another has thereby created a joint tenancy in the account." Id. at 8, 101 A.2d 568.
Kristi certifies with supporting documentation that the funds in the joint account derive solely from her earnings, teacher's pension and reimbursements for funds paid out for Kurt's business expenses. She argues that the funds are not only hers alone, but also exempt from seizure as protected pension payments. See N.J.S.A. 25:2-1(b) ; C.P. by J.P. v. Twp. of Piscataway Bd. of Educ., 293 N.J. Super. 421, 437, 681 A.2d 105 (App. Div. 1996). The motion court did not determine whether the levied *54 funds belonged to the judgment debtor, Kurt, or to Kristi, nor if the funds were exempt from seizure.
BOA did not demonstrate that the funds in the account are the property of the judgment debtor, Kurt. BOA argues instead that the consent order constituted a settlement agreement and that the motion court properly enforced the settlement agreement by denying the cross-motion and turning over the funds. Neither Kristi nor Kurt signed the agreement. Defense counsel signed the agreement on behalf of defendants. Counsel stated at oral argument before us that he had also represented that Kristi agreed as well.
The consent order discusses the consequences of a default in Paragraph 7, which reads:
The Defendants hereby consent to Plaintiff's commencement of any and all actions by Plaintiff necessary to collect upon Plaintiff's Judgment, including, but not limited to, any remedies or activities permitted by this agreement, the Judgment and/or any applicable law, within five (5) days after Defendants fail to make any payment on its due date as defined herein which shall be considered to be a default. Defendants shall be responsible for all costs and attorneys' fees associated with any and all actions *1061 by Plaintiff necessary to collect upon the agreement set forth in this Consent Order and/or Plaintiff's Judgment, including those incurred in connection with any default notices and/or collection letters, and such costs and attorneys' fees shall be added to the balance due;
These terms do not constitute a waiver of the Baurs's right to dispute the bank levy. Certainly Kristi, who was not a party to the underlying litigation, nor a signatory to the agreement, did not forfeit her right to her sole funds deposited in the joint account. BOA must demonstrate to the court that these funds belong to Kurt. Also, if the funds are statutorily immune from seizure, they are not subject to the BOA levy.
Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

We will refer to the Baurs by their first names for ease of reference and intending no disrespect.

We question the wisdom of the same law firm representing both Kristi and Kurt in this matter. See RPC 1.7, Conflict of Interest: General Rule.