**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1437-18T3

STATE OF NEW JERSEY, ex rel.
ALLSTATE INSURANCE COMPANY
and MEDICAL INVESTIGATION
GROUP, INC.,

       Plaintiffs-Respondents,

v.

HARSHAD PATEL, AP SURGERY
CENTER, LLC, and AP DIAGNOSTIC
IMAGING, INC.,

       Defendants-Appellants.

_____

Submitted November 20, 2019 – Decided December 5, 2019

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0954-16.

Ehrlich, Petriello, Gudin & Plaza, attorneys for appellants (John J. Petriello, on the briefs).

Kennedy Vuernick, LLC, attorneys for respondents (Richard E. Vuernick, of counsel; John Francis Kennedy, of counsel and on the brief).

PER CURIAM

Defendants Harshad Patel (Patel), AP Surgery Center, LLC (APSC), and AP Diagnostic Imaging, Inc. (APDI) appeal from five separate orders related to a settlement with plaintiffs Allstate Insurance Company and Medical Investigation Group, Inc. (Relators). Specifically, defendants appeal from the following: a July 10, 2018 order enforcing the parties' settlement and setting counsel fees; an August 14, 2018 order imposing a penalty against defendants for violating the July 10 order; a November 16, 2018 order denying defendants' motion to vacate the settlement and the July 10 and August 14 orders; a November 16, 2018 order awarding additional counsel fees to Relators; and a November 30, 2018 turnover order. We affirm all orders.

Patel is the member and manager of APSC and the CEO of APDI.[1] Relators filed a qui tam action under the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 to -18 (NJFCA), against defendants. Relators' complaint alleged defendants falsely underreported the gross receipts of APSC and APDI from 2009 to 2015 to avoid payment of their obligation to New Jersey's Health Care

---

[1] As ambulatory care facilities, APSC and APDI are obligated to pay an annual assessment on gross receipts to the Department of Health in accordance with N.J.S.A. 26:2H-18.57(b).

A-1437-18T3

Subsidy Fund. Relators alleged defendants "evaded over $1 million in annual assessments."

Defendants filed an answer and counterclaim. For nearly one year, the parties engaged in extensive settlement negotiations. On February 7, 2018, the parties signed a settlement agreement (Settlement Agreement) wherein defendants agreed to pay the State of New Jersey (State) a lump sum of $718,000 (Settlement Amount) by May 7, 2018. If defendants failed to pay the Settlement Amount, the Settlement Agreement provided "the Settlement Amount shall immediately increase as [sic] it shall accrue interest at the rate of 15% per annum, computed monthly until paid."

In accordance with N.J.S.A. 2A:32C-7(d), the State would pay Relators thirty percent of the Settlement Amount. In addition, in accordance with N.J.S.A. 2A:32C-8(b), defendants were to pay Relators' reasonable counsel fees and costs incurred during litigation, "to Relators' counsel pursuant to and governed by a separate agreement between [d]efendants and Relators." Defendants' payment of legal fees and costs was to be paid on the same day as payment of the Settlement Amount. Although the Settlement Agreement provided that a separate written agreement would govern Relators' counsel fees and costs, the parties never executed such an agreement.

3

Five days before payment of the Settlement Amount was due, defendants' then attorney moved to withdraw as counsel. Defense counsel certified that "[s]ignificant differences have arisen between the [f]irm and [d]efendants and, as of the filing of the within [m]otion, an irrevocable breach has developed."

During the pendency of defense counsel's motion to withdraw from representation of his clients, defendants failed to pay the Settlement Amount. On May 8, 2018, the State sent a notice of default to defendants' attorney. In addition, Relators advised they intended to enforce the Settlement Agreement and would request counsel fees and costs from defendants pursuant to the NJFCA. On May 23, 2018, Relators filed a motion to enforce the Settlement Agreement and establish counsel fees and costs.

On May 25, 2018, the motion judge granted defense counsel's motion to withdraw and ordered defendants to retain new counsel by July 9, 2018. At the May 25 motion hearing, Patel told the judge he intended to pay the full amount to the State "within one week" and that afternoon wired $718,000 to the State. Patel also informed the motion judge he "never agreed with any other fees." Consistent with Patel's May 25 statement in court, defendants did not pay the statutory counsel fees.

Relators' motion to enforce the Settlement Agreement and establish counsel fees and costs was adjourned until July 10, 2018 in anticipation of defendants retaining new counsel. Defendants failed to hire new counsel and filed no opposition to Relators' motion. Nor did defendants appear in court on July 10. The judge entered an order enforcing the Settlement Agreement and awarding counsel fees and costs, in accordance with N.J.S.A. 2A:32C-8(b), in the amount of $126,764. In the July 10, 2018 order, the judge provided "that if [defendants] fail to issue full payment to [Relators' counsel] the [d]efendants shall pay an additional penalty of 15% of the [$126,764]" within thirty days.

Defendants failed to comply with the July 10 order and Relators asked the court to compel payment of the fees awarded and reduce the fifteen percent penalty to a sum certain. On August 14, 2018, the motion judge entered an order requiring defendants to pay $145,778.60, representing the counsel fees awarded in the July 10 order, plus the additional fifteen percent penalty for failure to comply with that order. The August 14 order was docketed as a judgment on August 16, 2018.

Defendants' new counsel entered an appearance on August 16, 2018. On August 23, 2018, the trial court issued a writ of execution on funds held in Patel's name at Unity Bank. On August 28, 2018, defendants' new counsel filed a

motion to vacate the Settlement Agreement and the July 10 and August 14, 2018 orders.

The judge heard argument on defendants' motion on October 12, 2018. In a decision placed on the record, the judge denied defendants' motion to vacate the Settlement Agreement. The judge explained "[d]efendant[s] entered into this settlement to terminate litigation and to avoid potentially millions of dollars in liability. Defendant[s are] now attempting to avoid the agreement on the basis that [Patel] and his prior counsel were at odds at the time the settlement was negotiated." The judge rejected defendants' argument as "unmeritorious" and "simply not supported by the record." The judge stated:

> The Rule is clear that . . . there must be a showing of a mistake or fraud or some other reason justifying the relief sought. The mere allegation that counsel and his client[s] were on bad terms at the time the settlement was negotiated is by itself unsupported as the [c]ourt has deemed it to be by the record or in the record.
>
> In fact, the only evidence of this allegation, as advanced by [Patel], is the fact that defense counsel did -- did file a motion to be relieved at or near the conclusion of the case.
>
> While at first glance such a motion may appear to support the defendant[s'] claims, this [c]ourt finds that given the strong public policy in favor of enforcing settlements, a further review is, therefore, warranted.

A-1437-18T3

Ultimately, Mr. Patel's claims were debunked by -- by the record and the credible arguments advanced by the [R]elators.  The procedural history and the [c]ourt record shows that the complaint was filed back in May 2016 and that . . . these parties having concluded the matter in February of 2018, had several months . . . indeed over a year of . . . negotiations.

. . . defendant[s] faced at least $2.9 million in damages and fees, given the treble damages and fee shifting that is mandatory under the New Jersey False Claim Act.  The State demanded $1.5 million to settle initially.  [Defendants'] prior counsel was able to achieve a settlement that saved [these defendants] at least $2 million and was less than half of the State's demand.  Defendants agreed to the settlement in February 2018, all represented, and defense prior counsel . . . did not move . . . to be relieved from this case until three months later . . . .

The judge found "Mr. Patel understood what he was signing.  He had clear guidance from his attorney and he entered into the settlement voluntarily.  Thus there's no legal basis to disturb the settlement."

The judge reserved on defendants' motion to vacate the fees awarded in the July 10 and August 14, 2018 orders.  The judge allowed Relators until October 15, 2018 to file a supplemental certification seeking additional attorney's fees associated with defending the motion to vacate the Settlement

Agreement.[2]  She also allowed defendants until October 19 to file objections to the entire fee amount awarded.

During this time period, the sheriff levied on $145,959.83 held in a joint bank account by Patel and his wife at Unity Bank.  Relators filed a turnover motion, which was granted on November 30, 2018.

In two separate November 16, 2018 orders, the motion judge denied defendants' motion to vacate the Settlement Agreement and fee award orders. She also granted Relators' request for additional attorney's fees and costs in the amount of $16,947.80.

On appeal, defendants argue the judge erred by denying their motion to vacate the settlement.  They also contend the judge improperly awarded both statutory counsel fees and fees pursuant to Relators' contingent agreement. Defendants further challenge the penalty imposed by the judge for their violation of the July 10, 2018 order.   In addition, defendants maintain the judge erred in ordering the turnover of funds in a joint bank account held by Patel and his wife because the funds did not belong to Patel.

---

[2]  In the supplemental certification, Relators' counsel explained the retainer agreement allowed a contingent fee of forty-five percent of the $245,000 awarded to Relators, or $96,930.  However, Relators' counsel "deemed that amount inequitable and instead enforced the retainer agreement only for a contingency of slightly more than 11%," or $24,176.75.

A-1437-18T3

We first consider the judge's denial of defendants' motion to vacate the settlement. We review the denial of motion to vacate a settlement pursuant to Rule 4:50-1(f) for abuse of discretion. Cmty. Realty Mgmt. v. Harris, 155 N.J. 212, 236 (1998). Rule 4:50-1(f) permits a court, in its discretion, to relieve a party from a final judgment for "any . . . reason justifying relief from the operation of the judgment or order." Id. at 237 (quoting R. 4:50-1(f)). Such relief "is available only when 'truly exceptional circumstances are present.'" US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 484 (2012) (quoting Housing Auth. of Morristown v. Little, 135 N.J. 274, 286 (1994)).

New Jersey courts have refused to vacate final settlements absent compelling circumstances. Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (citing Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)). "An agreement to settle a lawsuit is a contract, which like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)). The party seeking to vacate a settlement must provide "clear and convincing evidence" that the agreement should be vacated. DeCaro v. DeCaro, 13 N.J. 36, 42 (1953).

Defendants contend the motion judge improperly enforced the settlement when they were not represented by counsel. However, Relators filed the motion to enforce the settlement while defendants were represented by counsel.

Moreover, on February 7, 2018, when the parties entered into the settlement, defendants were represented by counsel. Because defendants were represented by counsel during the year-long negotiation of the Settlement Agreement and at the time defendants agreed to the settlement terms, defendants cannot challenge the fairness or equity of the Settlement Agreement. Patel specifically told the judge at the May 25 hearing that he reviewed the Settlement Agreement with counsel and found the terms to be satisfactory. Rule 4:50-1(f) is not "a pathway to reopen litigation because [Patel] either views his settlement as less advantageous than it had previously appeared, or rethinks the effectiveness of his original legal strategy." DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 261 (2009).

We next examine the judge's award of attorney's fees to Relators. We review a trial court's award of counsel fees for an abuse of discretion. McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion' and then only

because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

An award of attorney's fees is permitted "[i]n all cases where attorney's fees are permitted by statute." R. 4:42-9(a)(8). The New Jersey False Claims Act permits such fees. N.J.S.A. 2A:32C-8. Where a private party bringing a false claims action prevails, that "person shall also be awarded an amount for reasonable attorney's fees, expenses, and costs," N.J.S.A. 2A:32C-8(b), and the trial court shall award "[a]ll such expenses, fees, and costs . . . against the defendant." Ibid.

Rule 1:21-7(a) permits a client and an attorney to enter into a written contingent fee agreement. A contingent fee may be "comparable to or substantially different" from a statutory fee award. Szczepanski v. Newcomb Med. Ctr., Inc., 141 N.J. 346, 358-59 (1995). A contingent fee agreement and statutory-fee provision are distinct concepts since "[t]he agreement determines the fee payable by the prevailing party to counsel" and "[t]he statutory-fee award determines the fee payable by the unsuccessful party to the prevailing party." Id. at 358. Therefore, "the reasonable counsel fee payable to the prevailing party under fee-shifting statutes is determined independently of the provisions of the fee agreement between that party and his or her counsel." Ibid.

11

By the terms of the Settlement Agreement, "[d]efendants shall pay Relators' reasonable expenses plus reasonable attorneys' fees and costs pursuant to [N.J.S.A. 2A:32C-8(b)] that Relators incurred in connection with the Civil Action . . . to Relators' counsel pursuant to and governed by a separate agreement between [d]efendants and Relators." While the parties never reached a separate agreement, Relators are entitled to attorney's fees under the fee-shifting provision of N.J.S.A. 2A:32C-8(b).

There also was a contingent agreement between Relators and their counsel that entitled Relators' counsel to forty-five percent of any award if the State did not intervene in the action. Despite entitlement to a forty-five percent award, Relators' counsel elected to take a significantly reduced contingency fee of eleven percent of the Settlement Amount.

Having reviewed the record, the two fee awards were separate and distinct and therefore the judge did not err in awarding Relators' counsel reasonable costs and counsel fees under N.J.S.A. 2A:32C-8(b) in addition to the amount to which counsel was entitled under the contingent fee agreement. The judge aptly concluded "reasonable counsel fees payable to the prevailing party under fee-shifting statutes is determined independently of the provisions of fee agreements

A-1437-18T3

between a party and counsel."  She therefore determined defendants were not entitled to a credit for any perceived "double billing."

We next consider defendants' claim that the judge erred in imposing a fifteen percent penalty because defendants failed to comply with the July 10, 2018 order imposing counsel fees.  When a party violates a court order, the trial court may impose various sanctions.  See, e.g., Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 513-15 (1995) (outlining range of sanctions available to the trial court when a party violates a discovery order); Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 82 (App. Div. 2004) (outlining trial court's ability to impose sanctions for a party's failure to comply with motion requirements); R. 1:10-3 (outlining trial court's ability to fashion relief to litigants when a party fails to comply with a judgment or order).  We review a trial court's decision to impose sanctions for abuse of discretion.  Abtrax, 139 N.J. at 517; N. Jersey Media Grp., Inc. v. State, Office of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017).

Here, the July 10 order specified "that if [defendants] fail to issue full payment to [Relators' counsel] the [d]efendants shall pay an additional penalty of [fifteen percent] of the [designated counsel fees] beginning on the 30th day."  The judge included the penalty provision to ensure compliance with the July 10

order. When defendants failed to comply with the terms of the July 10 order, the judge properly assessed the fifteen percent penalty.

We next review defendants' contention that the judge erred by ordering the turnover of funds in a joint bank account held by Patel and his wife because the funds did not belong to Patel.

The parties agree that the Multiple Party Deposit Account (MPDA) Act, N.J.S.A. 17:16I-1 to -17, applies. Under the MPDA Act,

> [u]nless a contrary intent is manifested by the terms of the contract, or the deposit agreement, or there is other clear and convincing evidence of a different intent at the time the account is created:
>
>> a. A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit. In the absence of proof of net contributions, the account belongs in equal shares to all parties having present right of withdrawal.
>
> [N.J.S.A. 17:16I-4(a).]

The MPDA Act creates a presumption that a joint account belongs to both account holders in equal shares. Ibid. To rebut the presumption, a party must present proof of net contributions to the joint accounts. Ibid. A party's net contribution is defined as

the sum of all deposits thereto made by or for him [or her], less all withdrawals made by or for him [or her] which have not been paid to or applied to the use of any other party, plus a pro rata share of any interest or dividends included in the current balance.

[N.J.S.A. 17:16I-2(f).]

Under the MPDA Act, a bank is "deemed authorized by all parties" on the joint account to make "[p]ayments pursuant to any statutory or common law right of set off, levy, attachment or other valid legal process or court order, relating to the interest of any one or more of the parties." N.J.S.A. 17:16I-8(b).

In the context of a turnover action regarding a joint account, unlike the MPDA Act, "the judgment creditor has the burden 'to prove that the moneys thus deposited are the individual property of the judgment debtor, and therefore applicable to the satisfaction of the judgment.'" Banc of Am. Leasing & Capital, LLC v. Fletcher-Thompson, Inc., 453 N.J. Super. 50, 53 (App. Div. 2018).

The parties disagree who bears the burden of proof regarding the funds in the joint bank account and whether the certification submitted by Patel's wife is sufficient to establish the funds belonged to her and not Patel.

Defendants were in the best position to offer proof regarding ownership of the joint bank account and bore the burden of proving that the funds subject to the turnover order belonged to Patel's wife. Patel's wife certified, without

15

evidentiary proof, "[t]he funds which were levied upon came from the sale of property. The property was in my name, and not in the name of [Patel]. These monies belong to me, and not to [Patel]." The certification fails to support the claimed net contributions by Patel's wife to the joint bank account as required by N.J.S.A. 17:16I-2(f).

Having reviewed the entire record and considered the contentions of the parties, we conclude the judge properly exercised her discretion in enforcing the Settlement Agreement, granting attorney's fees and costs in accordance with N.J.S.A. 2A:32C-8(b) and the contingent fee agreement, denying the motion to vacate the Settlement Agreement, and turning over funds in the joint account.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                          A-1437-18T3