**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2423-19
                          A-3419-19

PAN TECHNOLOGY, INC.,

     Plaintiff-Respondent,

v.

GERSHON ALEXANDER,

     Defendant-Appellant,

and

HAROLD P. COOK, III,
JOSEPH C. PERCONTI,
MICHAEL DELLA FAVE
and BRIAN LUBEERT and
ONE WASHINGTON
HOLDINGS, LLC, a New
Jersey Limited Liability
Company,

     Defendants.

_____

Argued April 21, 2021 – Decided August 3, 2021

Before Judges Ostrer, Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3565-11.

John J. Segreto argued the cause for appellant (Segreto & Segreto, LLP, attorneys; John J. Segreto, of counsel and on the briefs).

Matthew S. Slowinski argued the cause for respondent (Slowinski Atkins, LLP, attorneys; Matthew S. Slowinski, on the briefs).

PER CURIAM

In these two appeals, which we consolidate for purposes of our opinion, we review two trial court orders directing the turn-over of funds to plaintiff Pan Technology (Pan) to satisfy a 2011 judgment against Gershon Alexander (Gershon).[1] Because there existed genuine issues of material fact regarding who owned the funds, we reverse both orders, and remand for discovery and plenary hearings.

I.

On May 26, 2011, Pan obtained final judgment for $246,134.56 plus interest against Gershon and others. Pan recorded the judgment as a lien on September 1, 2011. In November 2019, Pan intensified collection efforts and secured a Writ of Execution against Gershon in the amount of the judgment.

---

[1] Because these appeals involve three family members with the same last name, we use first names for convenience and mean no disrespect in doing so.

Pan then filed two separate turn-over motions — one involving a TD Ameritrade account in which Gershon's father Harold has an interest, and a second involving a Santander Bank account in which Gershon's wife Tamar has an interest. We review the circumstances surrounding each order.

A.

At Pan's request, the Passaic County Sheriff served a TD Ameritrade branch in Wayne with the writ of execution. A bank representative informed the officer that the bank maintained an account with $127,181.73 "in the name of Harold C. Alexander and Gershon Alexander."

Pan then filed a motion to turn over the account's funds. Gershon responded by filing a claim of exemption from writ of execution pursuant to R. 4:59-1(h). Both Gershon and Harold requested a hearing, but the court did not hold one. Shortly thereafter, the two men presented sworn affidavits opposing Pan's motion. Harold asserted he added his son's name to the account in November 2018 "for convenience and for transfer on death." Harold stated he deposited all the money in the account, and Gershon deposited nothing. Gershon asserted the same thing in his affidavit. Gershon also provided account statements that purported to show that Harold entirely funded the account. Gershon asserted "[t]he contents of the account are not [his] assets" and thus

A-2423-19

should not be eligible to satisfy Pan's judgment; and "[h]ad [he and Harold] realized that placing [Gershon's] name on the account would jeopardize [Harold]'s funds to satisfy [Gershon's] legal obligations," they never would have done so. The relevant account statements list both Harold and Gershon on the account, and the account was labeled "JT WROS," which the parties agree signifies a joint tenancy with the right of survivorship.

The court heard oral argument on the motion but did not take testimony. Pan's counsel argued "all the evidence . . . is that this is a joint tenant account. They both own an interest in the whole, and it . . . was a gift in praesenti" absent evidence to the contrary. Gershon's counsel conceded "[t]he title to the account allows both parties to direct control over the account," but he asserted that parties may present evidence they "intended something different than what . . . title to the account" says; and the affidavits established the parties' intent was to add Gershon to the account so it would pass to Gershon upon Harold's death.

The judge noted that no one submitted "opening account documents" that would have defined Gershon's authority, if any, over the account. The judge said he struggled with the fact that a [transfer on death] account was "plated" with both names, meaning both equally controlled the account. And, "there's certainly indications that indicate that both parties [Gershon and Harold] . . . can

make a claim to all the assets in the account." The judge also asked if Harold alone owned the accounts that funded the TD Ameritrade account, but counsel could not provide an answer.

The court granted Pan's motion from the bench, finding the information presented established the account was plated as a joint account. "And with respect to a joint account, it indicates that either party on a joint account has the right to the assets within the account, simply based on the plating." Defendant immediately moved for a stay, which the court denied. The briefs indicate the funds have since been removed from Harold's account and turned over to Pan.

B.

Turning to the Santander account, the Middlesex County Sheriff served Santander's East Brunswick location with a levy on Gershon's funds. Almost two months later, the bank notified the Sheriff that it was "currently holding $19,562.74 in the name(s) of GERSHON D ALEXANDER in response to a[n] NJ Execution." The Sheriff then served Gershon with a notice that the funds were levied upon. Pan filed a motion to turn over the funds, which Gershon opposed. Gershon certified the account had always belonged solely to his wife, and he was not a joint holder of the account. Gershon attached a recent account statement that only bore Tamar's name.

5

In a reply certification, Pan's counsel recounted a telephone conversation with Santander's legal counsel, William Votta, who stated that Gershon removed his name from the levied account on January 23, 2020, which was two days after the bank advised the Sheriff it was holding Gershon's funds. Votta told counsel the account previously listed Gershon and Tamar as co-owners. The court issued an order directing the bank to turn over the funds.

Gershon then sought reconsideration, based on a certification from the same bank lawyer who spoke to Pan's counsel. Votta certified that after receiving notice of the levy, Gershon complained to the bank's "Complaint's Team" that he did not jointly own the account "regardless of the information contained in Santander's electronic systems," and notwithstanding that Gershon had been receiving account statements since November 2017, when Santander added him to the account. Votta stated that after the court decided the turn-over motion, "the Santander Complaints Team determined that Gershon Alexander was never intended to be a joint account holder [of the account] . . . [and] [t]he funds, at all times, belonged solely to Tamar Alexander and should not have been attached by Santander in response to the Writ." Gershon filed another certification, asserting the funds were his wife's alone.

A-2423-19

The court denied Gershon's reconsideration motion in a written opinion. The court "found that [Gershon] has not provided the [c]ourt with any new information for which the [c]ourt can or should vacate" its turn-over order. The court agreed with Pan that Votta's certification was comprised of hearsay statements by unnamed Santander employees who "apparently concluded that some other unnamed Santander employee must have made an error in inadvertently adding [Gershon] to the account." The court cited the absence of certifications from any of these other unnamed employees and noted Gershon asked the bank to remove his name from the account after the levy was served, even though he had received bank statements since November 2017. The court also cited the absence of any account-related documents substantiating Gershon's claims.

Gershon now appeals the turn-over orders involving the two accounts, and the denial of the reconsideration motion involving the Santander account.

II.

A.

A-2423-19

Turning first to the TD Ameritrade account, we reverse the trial court's turn-over order because the motion record reflects there are material factual issues that warrant a plenary hearing after appropriate discovery.[2]

"[W]hen seeking a turnover from a joint account, the judgment creditor has the burden 'to prove that the moneys thus deposited are the individual property of the judgment debtor, and therefore applicable to the satisfaction of the judgment.'" Banc of Am. Leasing & Cap., LLC v. Fletcher-Thompson Inc., 453 N.J. Super. 50, 53 (App. Div. 2018) (quoting Esposito v. Palovick, 29 N.J. Super. 3, 10-11 (App. Div. 1953)). Pan argues that, if an account is a joint tenancy with the right of survivorship, then each named account holder owns the entirety of the account. Generally speaking, this is accurate, as "each joint tenant . . . holds 'per tout,' or the entire property, meaning that each co-owner is entitled to possess and enjoy the entire estate. This feature also enables the

---

[2] Gershon and Harold filed a claim of exemption with the trial court, and Gershon's counsel noted at oral argument before the trial court that they were entitled to a hearing, but the court evidently did not conduct one. See R. 4:59-1(h) (stating that "[i]f . . . the court receives a claim of exemption . . . it shall hold a hearing thereon within 7 days after the claim is made"). Because Gershon does not contend the court erred in not holding a required hearing, we deem the argument waived, and we do not address it. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

survivor of the joint tenants to obtain sole possession of the whole property without any further conveyance." 7 Powell on Real Property § 51.03 [2] (2021).

But, the general rule is subject to an exception. Gershon and Harold asserted that Gershon was added to the account for "convenience" and for testamentary purposes. Our caselaw recognizes that in these instances, "[i]f a joint account, with a right of survivorship, is established for [testamentary] purpose[s], the assets in the account remain the sole property of the depositor during his or her lifetime." Lebitz-Freeman v. Lebitz, 353 N.J. Super. 432, 436-37 (App. Div. 2002). Gershon and Harold contended that was their purpose in adding Gershon to the account, which only Harold funded. And because Gershon was added solely for testamentary purposes, he had no control over trading in the account, notwithstanding the account's title, which counsel conceded at the motion hearing "allow[ed] both parties [Gershon and Harold] to direct control over the account."

The court mistakenly rejected Gershon's and Harold's assertions, based on the absence of additional corroboration — such as information about the source of funds for the account; whether Harold or a financial advisor directed trades in the account; and whether Gershon was authorized to trade in the account. Just as it is inappropriate on a summary judgment motion to make findings about a

party's intent and credibility on a documentary record, it was inappropriate here. See McBarron v. Kipling Woods, L.L.C., 365 N.J. Super. 114, 117 (App. Div. 2004) (stating "[t]he cases are legion that caution against the use of summary judgment to decide a case that turns on the intent and credibility of the parties"); see also Bruno v. Gale, Wentworth & Dillon Realty, 371 N.J. Super. 69, 76-77 (App. Div. 2004) (reversing and remanding for a plenary hearing where trial judge reached a "decision based on certifications containing conflicting factual assertions").

The court must hold a plenary hearing, with sworn testimony from Harold and Gershon, to properly assess Harold's intent in adding Gershon's name to the account. In advance of that hearing, to fairly test Harold's and Gershon's assertions, Pan may conduct appropriate discovery, including depositions and the production of documents related to the creation, funding, and management of the account. See R. 4:59-1(f); see also R. 6:7-2. Harold and Gershon may seek third-party discovery, as well. Therefore, we reverse the trial court's order and remand for discovery and a plenary hearing.

B.

We also reverse the court's order denying reconsideration of its order regarding the Santander account. (As we reverse the reconsideration denial, we

do not address the correctness of the initial order.)  In granting the initial turn-over order, the court relied on two hearsay statements from the bank, but the court then refused on hearsay grounds to consider a third statement from the bank indicating the first two statements were not accurate.  That was error.  The court should have granted the reconsideration motion and conducted a plenary hearing to resolve the factual question of whether Gershon's name was added to his wife's account by mistake.

In securing the initial turn-over order, Pan relied on the bank's unsworn letter to the Sheriff that the bank was "currently holding $19,562.74 in the name(s) of GERSHON D ALEXANDER," and Votta's out-of-court oral statements to Pan's counsel.  The bank's letter conceivably could have been offered as a "business record" under N.J.R.E. 803(c)(6) had the appropriate custodian presented the requisite foundation, see Manata v. Pereira, 436 N.J. Super. 330, 346 (App. Div. 2014) (stating that a proponent of a business record must "present a custodian of records, if not the particular" author of the report); Konop v. Rosen, 425 N.J. Super. 391, 403 (App. Div. 2012) (reciting the requirements for the rule), but no one did.

And, we see no basis to deem Votta's hearsay statements to Pan's counsel as admissible.  See Est. of Kennedy v. Rosenblatt, 447 N.J. Super. 444, 456

11

(App. Div. 2016) (observing that it "bears emphasizing that '[a]ffidavits by attorneys of facts not based on their personal knowledge but related to them . . . constitute objectionable hearsay'" (alterations in original) (quoting Mazur v. Crane's Mill Nursing Home, 441 N.J. Super. 168, 179-80 (App. Div. 2015))). Our rules require that evidence on a motion be presented by "affidavits [or certifications] made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify."  R. 1:6-6; cf. Jeter v. Stevenson, 284 N.J. Super. 229, 233 (App. Div. 1995) (stating "evidence submitted in support of a motion for summary judgment must be admissible").

We acknowledge that Gershon did not object to these hearsay statements when offered, and "hearsay evidence not objected to is evidential," State v. Ingenito, 87 N.J. 204, 224 n.1 (1981) (Schreiber, J., concurring).  But, we also "presume that the fact-finder appreciates the potential weakness of such proofs, and takes that into account in weighing the evidence." N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 349 (App. Div. 2016).

Votta's certification, offered to support Gershon's reconsideration motion, raised substantial questions about the trustworthiness of the bank's initial letter to the Sheriff that it held over $19,000 of Gershon's funds, and the accuracy of

12

Votta's reported oral statements to Pan's counsel regarding account ownership. Although we deferentially review a court's decision on a reconsideration motion for an abuse of discretion, see Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996), the court mistakenly refused to consider the new information in Votta's certification, see Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 175 (App. Div. 2005) (stating that a court should grant a motion for reconsideration if "there is good reason for it to reconsider new information" (quoting Pressler, Current N.J. Court Rules, cmt. on R. 4:49-2 (2005))).

While a trial judge is not obliged to reconsider an order when presented with "new" information that the movant could have presented before, see DelVecchio v. Hamberger, 388 N.J. Super. 179, 189 (App. Div. 2006), the circumstances here indicate that Votta's certification was not previously available. Prompted by the bank's initial statement that the $19,562.74 was his, Gershon pressed the bank to investigate his claim that it erred. He did not control the speed of the bank's complaint review process. Only after the bank completed its review could Gershon present the affidavit supporting his reconsideration motion.

The court also erred in rejecting Votta's affidavit on hearsay grounds. Although we review a court's evidentiary decision for an abuse of discretion,

Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382 (2010), we do not defer to decisions based on the wrong legal test, State v. Hyman, 451 N.J. Super. 429, 441 (App. Div. 2017). Under N.J.R.E. 104(a), the Complaint Team's statement did not have to be admissible hearsay for the court to use it to reconsider its reliance on the bank's initial statement that it held $19,562.74 of Gershon's money. See N.J.R.E. 104(a)(1) (stating that the court is "not bound by evidence rules" except those pertaining to privilege and relevance, in deciding "any preliminary question about whether . . . evidence is admissible"); see also Estate of Hanges, 202 N.J. at 388 n.12 (noting that under N.J.R.E. 104(a), otherwise inadmissible hearsay may be considered to ascertain the admissibility of other evidence).

The fundamental issue before the court on the reconsideration motion was the trustworthiness of the bank's initial statement that Gershon owned the $19,562.74. Even if Pan had offered a records custodian and met the other prerequisites for admitting that statement as a business record under N.J.R.E. 803(c)(6), a "court retains the power to bar a business record if 'the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.'" Manata, 436 N.J. Super. at 346 (quoting N.J.R.E. 803(c)(6)). Here, Votta's affidavit was relevant to demonstrate that the bank's

initial statement may not have been trustworthy. Notwithstanding the embedded hearsay, the court should have considered Votta's affidavit to reconsider the admissibility of the bank's initial statement of ownership.

Upon doing so, the court should have determined there existed a genuine issue of fact regarding who owned the Santander account. Although the trial court appropriately identified other evidence that might be relevant to the ultimate question, including account statements and Gershon's evident acquiescence to statements that listed him as a joint owner, Pan bore the burden to establish Gershon's ownership. In advance of the hearing, the court may permit appropriate discovery. And if the court does determine the account was jointly owned, it shall determine what if any funds in the account Tamar solely owned. See Banc of Am. Leasing, 453 N.J. Super. at 53-54 (holding that the motion court failed to identify to whom belonged the turned over funds in a joint account).

III.

Although we do not question the trial judge's fairness, we direct that a different judge oversee discovery and conduct the remand hearings. See In re D.L.B., ___ N.J. Super. ___, ___ (App. Div. 2021) (slip op. at 31-32) (approving assignment to a different judge on remand where the original judge made

15

credibility determinations on an incomplete record and may be perceived to be committed to his or her initial fact-findings).

Also, to restore the parties to the positions they would have held pending discovery and plenary hearings, Pan shall immediately return to TD Ameritrade and Santander Bank the funds it received pursuant to the turn-over orders. Upon the return of the funds, they shall be treated as subject to the original levies in accordance with Rule 4:59-1 pending the outcome of the remand hearings on Gershon's claim of non-ownership, or further order of the trial court.

Reversed and remanded as to both orders. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION