**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0238-23

IN THE MATTER OF THE
APPLICATION OF THE BOROUGH
OF EMERSON, BERGEN COUNTY,
NEW JERSEY, FOR A
DECLARATORY JUDGMENT.

_____

Argued April 1, 2025 – Decided September 5, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6300-15.

Jason M. Pfeffer argued the cause for appellant Emerson Redevelopers Urban Renewal, LLC (Sills, Cummis & Gross, PC, attorneys; Joseph B. Fiorenzo, of counsel and on the briefs; Stephen M. Klein, on the briefs).

Brian T. Giblin, Jr., argued the cause for respondent Borough of Emerson (Giblin & Gannaio, attorneys; Brian T. Giblin, Sr., and Brian T. Giblin, Jr., on the brief).

PER CURIAM

This appeal arises out of the efforts of the Borough of Emerson (Borough) to comply with its third round of affordable housing obligations and the contentions of appellant Emerson Redevelopers Urban Renewal, LLC (ERUR) that the Borough failed to meet its obligations. In seeking a declaratory judgment that it had a compliant affordable housing plan, the Borough entered into a settlement agreement with the Fair Share Housing Center (FSHC). The settlement agreement described the Borough's fair share plan and detailed several projects the Borough was undertaking to meet its affordable housing obligations, including ERUR's project to redevelop Block 419 in the Borough's central business district (CBD) zones. The Block 419 project was a mixed-use development containing twenty-nine affordable housing units, seven of which ERUR had the option to locate off-site at another location in the Borough or make a payment in lieu of construction. The trial judge entered a conditional final judgment of compliance and repose, accepting the settlement agreement which included the Borough's fair share plan and finding the plan provided a realistic opportunity for affordable housing.

Subsequently, ERUR purchased another property in the Borough's CBD zones and opted to build the seven off-site units from the Block 419 project at that site. When ERUR applied to the Borough's Land Use Board (Board) to

build a seven-unit affordable housing project at the new location, the Board declined to proceed because the proposed project at the new location required a use variance, which, in the CBD zones, could only be accomplished through an amendment to the Borough's redevelopment plan. ERUR filed a motion in aid of litigant's rights pursuant to Rule 1:10-3, seeking an order to compel the Borough to grant site plan approval for its new location without the need for a variance or amendment to the redevelopment plan. The judge denied the motion on May 12, 2023, and denied reconsideration on August 8, 2023. ERUR now appeals from both orders, essentially arguing the judge abused his discretion. We affirm.

I.

For context, we begin our analysis by briefly summarizing the pertinent principles that undergird Mount Laurel litigation. As our Supreme Court explained, "[t]he Mount Laurel series of cases recognized that the power to zone carries a constitutional obligation to do so in a manner that creates a realistic opportunity for producing a fair share of the regional present and prospective need for housing low- and moderate-income families." In re Adoption of N.J.A.C. 5:96 & 5:97 (Mount Laurel IV), 221 N.J. 1, 3-4 (2015) (footnote omitted). In 1975, the Court prohibited the discriminatory use of zoning powers

and mandated that municipalities in their development activities affirmatively "afford the opportunity for decent and adequate low[-] and moderate[-]income housing," commensurate with "the municipality's fair share of the present and prospective regional need therefore." S. Burlington Cnty. N.A.A.C.P. v. Mount Laurel Twp. (Mount Laurel I), 67 N.J. 151, 188 (1975); see also S. Burlington Cnty. N.A.A.C.P. v. Mount Laurel Twp. (Mount Laurel II), 92 N.J. 158, 205 (1983) (citing Mount Laurel I, 67 N.J. at 174) (reaffirming Mount Laurel I principles)

The Court also created judicial remedies, which include a "builder's remedy." See Mount Laurel II, 92 N.J. at 207. While noting that "the matter is better left to the Legislature," the Court acknowledged that "a strong judicial hand" must be used to "provide a realistic opportunity for housing, not litigation" and to avoid "[c]onfusion, expense, and delay," which it deemed the "primary enemies of constitutional compliance." Id. at 199, 212, 292. "In response, the Legislature enacted the [Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to -329.4], which created [the Council on Affordable Housing (COAH)] and vested primary responsibility for assigning and determining municipal affordable housing obligations in that body." Mount Laurel IV, 221 N.J. at 7.

A-0238-23

However, the Legislature since found that COAH's

> inability to function ultimately led the Supreme Court in 2015 to order the temporary dissolution of the requirement that administrative remedies be exhausted prior to resolving affordable housing disputes before the court and allowed the courts to resume their role as the forum of first resort for evaluating municipal compliance with Mount Laurel obligations pursuant to guidelines laid out by the Supreme Court's order.
>
> [N.J.S.A. 52:27D-302(*l*).]

The statute thus permits access to the judicial process for compliance by filing declaratory judgment litigation. Mount Laurel IV, 221 N.J. at 20. These civil actions are assigned to specially designated judges. Id. at 33, 36.

In 2024, the Legislature amended the FHA and codified the builder's remedy in N.J.S.A. 52:27D-302. Under this statutory framework, a builder's remedy lawsuit is an action filed by a real estate developer to compel a municipality to allow the construction of a large, multi-family housing structure or complex that includes affordable housing units. See In re Twp. of Bordentown, 471 N.J. Super. 196, 221 (App. Div. 2022) ("A builder's remedy provides a developer with the means to bring 'about ordinance compliance through litigation.'" (quoting Mount Olive Complex v. Twp. of Mount Olive, 356 N.J. Super. 500, 505 (App. Div. 2003))). "A builder's remedy is only appropriate 'after a [trial] court has had the opportunity to fully address

5

constitutional compliance and has found constitutional compliance wanting.'" Id. at 222 (alteration in original) (quoting Mount Laurel IV, 221 N.J. at 35-36). "Consequently, only a municipality that satisfies its Mount Laurel obligations 'obtain[s] immunity from a builder's remedy.'" Ibid. (alteration in original) (quoting Mount Laurel IV, 221 N.J. at 14).

## II.

We now turn to the facts underlying this appeal. By way of background, in October 2001, following an unrelated builder's remedy action against the Borough, the Law Division ruled that the Borough's land use regulations were unconstitutional and determined that the Borough had continued its exclusionary zoning practices in violation of the Mount Laurel doctrine. See Cmty. Devs. & Mgmt., LLC v. Borough of Emerson, No. BER-L-2734-00 (Law Div. Oct. 19, 2001) (slip op. at 2-3). On February 3, 2004, the Borough's Mayor and Council authorized the Board to determine whether certain areas located in the Borough's CBD zones should be designated as areas in need of redevelopment, including "Lots 1, 2, 3, 4, 5, 6.01, 6.02, 7, 8, 9 & 10 on Block 419" and "Lot[] 1" on Block 610, among others. On September 7, 2004, the Board adopted a resolution recommending that the Mayor and Council designate these areas as areas in need of redevelopment, which they did by resolution dated December 14, 2004.

A-0238-23

In 2006, the Board proposed a redevelopment plan for the CBD, requiring "the provision of affordable housing in accordance with the 'Fair Housing Act'" and requiring that "[a]ll development within the designated redevelopment area shall provide for the appropriate number of affordable dwellings." On July 11, 2006, the redevelopment plan was adopted and later amended in 2010.

On June 27, 2016, ERUR and the Borough entered into a redevelopment agreement regarding the Block 419 project. Section 4.03 of the agreement stated that "[t]he [p]arties recognize[d] and acknowledge[d] that the [p]roject w[ould] generate a fair share housing requirement for [ERUR] pursuant to the [a]ffordable [h]ousing [r]equirements established by the State of New Jersey and [COAH]" and that "[t]he presumptive percentage of set aside units to be built shall be twenty percent." The agreement further provided that ERUR and the Borough were to "explore alternative sites to accommodate all of the [low-] and [m]oderate[-income] [h]ousing obligations associated with this [p]roject at another location in the Borough, subject to any necessary court approval." Additionally, the agreement stated that ERUR, as the redeveloper, "agree[d] to proceed in good faith and at its own cost and expense to obtain all [g]overnmental [a]pprovals to develop and construct the [p]roject in accordance with the [r]edevelopment [p]roject [s]chedule" and "agree[d] that it [would] not

A-0238-23

seek any use variances pursuant to [N.J.S.A.] 40:55D-70(d) in connection with its applications for the [g]overnmental [a]pprovals."

On December 20, 2016, the Mayor and Council adopted ordinance 1535-16, which amended the 2010 redevelopment plan. The purpose of ordinance 1535-16 was to, among other things, "provide for affordable housing in an appropriate location within the Borough." To that end, the ordinance amended the permitted uses in the CBD zones under § 290-68 of the Borough's zoning ordinance, Emerson, N.J., Code § 290-68, to include, among other things, "[m]ulti-family residential dwellings above at-grade, retail, commercial and other principal permitted uses." It permitted "[m]ulti-family residential dwellings at grade only where they front on Lincoln Boulevard and only in areas where the building is behind a building that fronts on Kinderkamack Road." The ordinance also amended area and bulk requirements for the CBD zones. It further stated under "Deviation Requests" that "any changes to the uses permitted in the . . . [r]edevelopment plan . . . shall only be permitted by an amendment to this [o]rdinance by the Mayor and Council upon a finding that such deviation would be consistent with and in furtherance of the goals and objectives of this [o]rdinance."

8

On July 18, 2017, the Council adopted a resolution that amended the June 2016 redevelopment agreement between ERUR and the Borough to "reflect their mutual understanding with respect to the implementation of the development and requirement of affordable housing units to be built" in the Block 419 project. The resolution clarified that of the twenty-percent set-aside for affordable housing units within the Block 419 project, fifteen percent should be built on-site "and the remainder sh[ould] be provided for by any of the following options . . . : ([1]) construct[ing] affordable units on-site; or (2) construct[ing] the affordable units elsewhere within the Borough ('[o]ff-site'); or (3) mak[ing] a payment in lieu of constructing the affordable units; or (4) provid[ing] a combination of a payment in lieu and on-site or [o]ff-site construction."

On November 21, 2017, the Borough and FSHC entered into a settlement agreement to resolve the Borough's earlier 2015 declaratory judgment action related to the Borough's compliance with its affordable housing obligations. The settlement agreement provided that FSHC "agree[d]" that the Borough had a plan to implement and satisfy its obligations "under the Mount Laurel doctrine and Fair Housing Act." The agreement detailed that the Borough's affordable housing obligations included a "[r]ehabilitation [s]hare" of twenty units, a

9

"[p]rior [r]ound [o]bligation" of seventy-four units, and a "[t]hird [r]ound . . . [p]rospective [n]eed" of two hundred and thirty-four units.

The settlement agreement further stated that, for the Borough's third round affordable housing credits, it "ha[d] a realistic development potential (RDP) of [fifty-three] units."  Among the projects slated to satisfy the RDP of fifty-three units was ERUR's Block 419 project that would provide twenty-nine credits. The settlement agreement explained that "[t]he Block 419 Project ha[d] a minimum 15% set-aside, or [twenty-two] units, with an option for off-site provision or payment-in-lieu for the remaining [seven] units" and that "[i]f such option [was] exercised, the Borough [would] show at the midpoint review how it [would] provide a realistic opportunity for the remaining [seven] units, in accordance with the provisions of this [a]greement."

On December 10, 2018, the Board held a meeting to discuss ERUR's preliminary and final site plan approval for the Block 419 project.  According to the meeting minutes, ERUR's attorney at the time "stated the Fair Share Housing element was a key component in the plan, which include[d] [one hundred and forty-seven] apartments on the [second to fourth] floors, retail on the first floor, and a parking garage for residents and commuters."  On December

28, 2018, the Board passed a resolution approving the Block 419 project and granting site plan approvals.

The resolution stated that ERUR had made an application to the Board

> for preliminary and final site plan approval and a major soil moving permit to demolish the existing improvements on the property and redevelop the [p]roperty as a [four]-story, [one hundred and forty-seven]-unit inclusionary residential development with parking garage, ground[-]floor retail, amenities and other site improvements, including twenty[-]two . . . affordable housing units on site and an additional seven . . . credits off site within the Borough, [which would] provide the Borough with a total of twenty-nine . . . affordable housing credits, located on Kinderkamack Road between Lincoln Boulevard and Linwood Avenue, and also known as Block 419, Lots 1, 2, 3, 4, 6.01, 6.02, 7, 8, 9 [and] 10 on the [t]ax [a]ssessment [m]ap of the Borough . . . (the "Property"), in the CBD-10 [z]oning [d]istrict, in accordance with the Borough's [r]edevelopment [p]lan for the [CBD] [r]edevelopment [a]rea.

Under the resolution, ERUR's proposed Block 419 project was subject to "both the [r]edevelopment [a]greement between the Borough and [ERUR] dated June 14, 2016, . . . as well as the [s]ettlement [a]greement between the Borough and the [FSHC], dated November 21, 2017," requiring "twenty[-]nine . . . affordable housing units," "seven . . . of which [could] be provided off[ ]site." The resolution specified that approval for the Block 419 project did "not constitute approval or recommendation for approval for site plan or any variance

11

not [t]herein referenced or any exception or permit not requested by the [a]pplicant, nor any site plan, variance or exception or permit which m[ight] not be expressly or specifically created by th[e] [r]esolution."

On January 25, 2019, a conditional final judgment of compliance and repose in connection with the Borough's declaratory judgment action and the settlement agreement between the Borough and FSHC was entered. In the conditional final judgment, the trial court accepted the November 2017 settlement agreement between the Borough and FSHC as well as the plan for affordable housing within the agreement and found that "it create[d] a realistic opportunity for satisfaction of the Borough['s] . . . [f]air [s]hare of low[-] and moderate-income housing." As a result, the court determined that the Borough's plan and implementing ordinances were "constitutionally compliant," the Borough "satisf[ied its] cumulative third round Mount Laurel affordable housing obligations," and the Borough was "entitled to protection" from Mount Laurel compliance litigation until July 1, 2025, subject to the conditions set forth in the judgment. The court directed, among other things, that there would be a "midpoint realistic opportunity review due on July 1, 2020," whereby the Borough would provide "a status report as to its implementation of its [p]lan and an analysis of whether any unbuilt sites or unfulfilled mechanisms continue[d]

12

to present a realistic opportunity and whether any mechanisms to meet unmet need should be revised or supplemented."

On June 24, 2020, ERUR, as an interested party to the Borough's declaratory judgment action, filed its first motion in aid of litigant's rights seeking, among other things, a finding that the Borough had violated the January 25, 2019 judgment. The motion also sought the appointment of a "Mt. Laurel Implementation Monitor" to ensure the Borough's compliance with its affordable housing obligations, including overseeing ERUR's "inclusionary development project known as the 'Block 419 Project.'"

On July 1, 2020, the Borough submitted its "[m]idpoint [r]eview [r]eport" pursuant to the November 2017 settlement agreement with FSHC and the January 25, 2019 conditional final judgment. In the report, the Borough described actions it had taken to satisfy the conditions in the judgment. Specifically, the report stated that, "[a]s of July 1, 2020, no affordable housing units ha[d] been physically rehabilitated or constructed within the Borough." However, referring to the Block 419 project, the report stated that "the most significant project, as contemplated by the Borough's housing plan, ha[d] received site plan approval by the Borough and w[ould] presumably proceed to construction in the near future." According to the report, "[t]he Borough

13

continue[d] to believe that the present plan represent[ed] a realistic opportunity for the development of affordable housing in the community."  Significantly, the midpoint review report made no mention of the seven off-site affordable housing units from the Block 419 project.

On March 16, 2021, the trial judge issued an order granting in part ERUR's June 24, 2020 enforcement motion.  In an accompanying written opinion, the judge was "concerned by the apparent failure of the timely development of affordable housing in the Borough and . . . more concerned that the development was directly approved and ordered by the court."  The judge found:

> The undisputed facts now presented reveal that the Borough has failed to provide evidence of final satisfaction of all conditions identified and referenced under the court's January 25, 2019 order of conditional final judgment of compliance and repose.  Over two years have passed since the entry of the court's January 25, 2019 order.  The [s]ettlement [a]greement executed in this . . . matter during November 2017 identified [ERUR's] property, the "Block 419 Project," as the parcel within the municipality designated [for] the majority of its third round [RDP].  The Borough was obligated under the very specific terms of the [s]ettlement [a]greement to assist in the development of the Block 419 Project to assure the timely development of affordable housing units and timely compliance with the Borough's [c]onstitutional obligations under the [Mount Laurel] doctrine.

14

Although the judge found that "[t]here clearly ha[d] been a delay in implementation of the previously approved plan and timeline provided for under the [s]ettlement [a]greement and subsequent court orders," the judge pointed out that "the information presented d[id] not provide the court with evidence meriting the granting of all relief sought." The judge explained that "[w]hat [was] not clear at th[e] time [was] whether the Borough's actions, or inactions, [were] solely responsible for the delay." Thus, the judge found that the appointment of an implementation monitor was "appropriate and warranted to address outstanding issues and to determine and advise the court of the basis for any purported delay in compliance." The judge also granted ERUR's request to "compel review of all applications for permits in connection with the Block 419 Project to be conducted within [twenty-eight] days of the submission to the Borough" to "assure continued progress in the development of the Block 419 Project." On April 22, 2021, the judge appointed retired Judge Harry G. Carroll to serve as the implementation monitor.

On August 13, 2021, ERUR submitted an application to the Board for the development of property located at 129 Kinderkamack Road, described as Block 610, Lot 1. ERUR had purchased the property on March 19, 2019, for $523,000. The application for "[r]esidential [n]ew [c]onstruction" and a "[r]esidential [u]se

15

[v]ariance" sought to demolish the current building on 129 Kinderkamack Road and construct

> a three-story, multi-family residential project containing [seven] affordable housing units, as well as [nine] parking spaces and other site improvements. The [seven] affordable housing units being proposed [we]re the off-site units permitted in connection with the project referred to as "Block 419" in Emerson's [Mount Laurel] [s]ettlement [a]greement and related [o]rders . . . . The "Block 419" project received preliminary and final major site plan approval from the [Board] for [one hundred and forty-seven] units, including [twenty-two] affordable housing units on site and an additional [seven] units to be proposed off[ ]site, as memorialized by [r]esolution dated December 28, 2018.

The application acknowledged that the proposed project did not comply with the Borough's current zoning ordinance and required several different types of variances, including a use variance pursuant to N.J.S.A. 40:55D-70(d)(1) "to permit a multi-family residential use including on the ground floor where [§ 290-68 of the Borough's] [o]rdinance requires multi-family residential housing to be located above ground-floor retail, commercial, or other principal permitted uses."

On October 1, 2021, Borough Planner Caroline Reiter sent a letter to the Board members regarding ERUR's application. Among other things, Reiter indicated that because "the proposed development does not include ground[-

16

]level retail, commercial or other permitted uses," "the proposed multi[-]family use is not a permitted use in the CBD-15 [z]one [d]istrict," where 129 Kinderkamack Road was located. In the letter, Reiter also stated that the permitted uses for the CBD-15 zone were contained in § 290-68 of the Borough's zoning ordinance and pursuant to that section, any use variance "shall be addressed as an amendment to the [r]edevelopment [p]lan rather than via variance relief through the [Board]." Accordingly, Reiter advised that "the Board [was] not able to consider a use variance application" but recommended several options, including carrying the application until the Borough amended the redevelopment plan or granting conditional approval of the application subject to the amendment of the redevelopment plan.

In a November 1, 2021 letter, the Board's attorney informed ERUR that its proposed development was "not a permitted use in the CBD-15 [z]one [d]istrict" and that "[b]ased upon the clear provisions" of § 290-68 of the Borough's zoning ordinance, the Board was "not permitted to and [did] not have the jurisdiction to consider the use variance application sought in th[e] matter." Instead, "the Mayor and Council would have to consider an amendment to the [r]edevelopment [p]lan to include the proposed use as a permitted use in the CBD-15 [z]one [d]istrict, in accordance with the [o]rdinance provisions." Thus,

17

according to the letter, "[u]nless and until the Mayor and Council adopt[ed] an amendment to the [r]edevelopment [p]lan to include the proposed use, the application c[ould not] proceed before the [Board]."

On December 16, 2021, seeking clarification on the status of the off-site units, the Borough's counsel proposed the following written questions, among others, to ERUR through its then counsel:

> 1)  Can your client put the [seven] remaining units in Block 419.  If no, then why not?
>
>     . . . .
>
> [2])  When is it that you contend the Borough knew that your client's purchase of Block 610 Lot 1 was for the purposes of development to include [seven] off[-]site units relating to the settlement agreement?
>
> [3])  Your client represented to [the Borough's] representatives that they were going to use Habitat for Humanity to build the off[-]site units.  When did they abandon that idea?
>
> [4])  When your client closed title on Block 610 . . . Lot 1[,] did they inform the Borough['s] elected officials or their attorneys that they purchased that property for the purpose[] [of] plac[ing] the remaining [seven] units required to satisfy it[s] affordable housing off[-]site units?  If yes[,] when?

There is no indication in the record that ERUR responded to the questions.

18

On February 22, 2022, Judge Carroll sent a status report to the trial court detailing the progress on the Block 419 project and the "[o]ff-[s]ite [u]nits." In the report, Judge Carroll stated that ERUR "has now requested that I, rather than the Borough's local zoning authorities, hear and decide its off-site development application." Judge Carroll said it was unclear from the appointment order whether he had authority "to hear and decide" ERUR's "off-site construction application" and requested "clari[ty]" from the court.

Shortly thereafter, on February 28, 2022, Mary Beth Lonergan, who had been previously appointed as the "[s]pecial [a]ffordable [h]ousing [p]lanning [m]aster" in the Borough's declaratory judgment action, sent a letter to Judge Carroll "recommend[ing] that [Judge Carroll] provide [ERUR] with site-specific relief to permit the site to be developed solely as multi-family residential affordable housing without the requirement for first[-]floor commercial uses." Lonergan opined "that the proposed location for the seven . . . off-site affordable units appear[ed] to be approvable, available, developable and suitable as those terms are defined [in] N.J.A.C. 5:93-1.3 [(2002)] and [-]5.3 [(1999)]."

Lonergan explained that the site "appear[ed] to be 'suitable' as the multi-family use will be adjacent to compatible land uses including commercial and retail uses, public/professional and personal services and nearby residential and

19

transportation services."  Despite noting that the Board had concluded it could not approve the project or the proposed use until the Council amended the redevelopment plan, Lonergan believed Judge Carroll had the authority to permit the project at 129 Kinderkamack Road due to his authority as implementation monitor.  Lonergan reasoned that COAH's "charge to eliminate cost-generative features of inclusionary zoning . . . outweigh[ed] the Borough's desire for first[-]floor commercial uses at th[e] site."

Nevertheless, on January 30, 2023, the trial judge entered an order[1] clarifying that Judge Carroll's authority as the implementation monitor "d[id] not include authority to grant [site] plan, use variance or other variance approval or amendment of the previously adopted redevelopment plan, without further order of the court and/or agreement of the parties."  In an accompanying written opinion, the judge found "no basis warranting the vast expansion of the [m]onitor's scope of duties or authority," adding:

> The court's April 22, 2021 order does not permit the [m]onitor to relieve [ERUR] of its obligations under the Municipal Land Use Law in connection with proposed development of the 129 Kinderkamack Road property. While the court recognizes that land use ordinances

---

[1]  The January 30, 2023 order also awarded ERUR counsel fees and "costs associated with the prior motion to enforce litigant's rights" in the amount of $15,358.35, and rejected ERUR's request for $153,583.50 in fees, which the judge deemed "excessive."

shall yield to the plans for affordable housing, there is nothing in the record which reveals that the development o[r] the potential limitations of development of the subject property is the result of a recalcitrant municipality seeking to place a road[block] to construction of affordable housing. . . . The April 22, 2021 order establishing the role of a [m]onitor was not intended to permit unfettered authority over the Borough's land use procedure[s] and regulations or the Municipal Land Use Law.

On March 1, 2023, ERUR filed another motion in aid of litigant's rights, which is the subject of this appeal. In the motion, ERUR sought an order directing the Borough to "grant site plan approval for the construction of a seven[-]unit, fully affordable housing building on Block 610, Lot 1, pursuant to the [s]ettlement [a]greement" between the Borough and FSHC "without the need for further variance or amendment to the [r]edevelopment [p]lan." In support, ERUR's managing member, Yaakov Klugmann, certified that he had had "many discussions" with the Borough about purchasing 129 Kinderkamack Road for the seven off-site affordable units for the Block 419 project prior to purchasing the property in 2019.

According to Klugmann, the Borough had "always been aware . . . that we would not be able to comply with the commercial on the ground[-]floor requirement, or the ban of multi-family housing on the ground floor," and "[a]t no time did any Borough official ever suggest that we would not be able to have

the [seven] units at that property[] without commercial space on the ground floor." Klugmann further certified that "at no time has anyone in the Borough ever suggested or come forward with another location for the [seven] off-site units." He averred that when he bought 129 Kinderkamack Road in 2019, he "was not aware of any other suitable and available property in the Borough" and having to relocate the seven off-site units to another location would "substantially increase the costs of the [p]roject[] and make it financially untenable."

ERUR also provided a certification from former Borough Mayor Louis J. Lamatina. Lamatina certified that the Borough had "examined" the property at 129 Kinderkamack Road "[b]y early 2017 at the latest" and "settled upon Block 610, Lot 1 for its construction." He added that the Borough was "well aware that a fully affordable[ ]housing building was not a permitted use because of the requirement for ground-floor commercial," but the Borough and ERUR "were in complete agreement that to comply with [the] Borough's obligation to build affordable housing, whatever necessary amendments to the [r]edevelopment [p]lan would be accomplished, just as [the Borough] did for the Block 419 [r]edevelopment." Lamatina added it was "distressing but not surprising" that the Borough had then "taken the position that the development of seven

22

affordable housing units at the [o]ff-site [p]roperty was not previously contemplated."

Following oral argument, the judge entered an order on May 12, 2023, denying ERUR's motion. In his accompanying written opinion, the judge acknowledged that "[t]he court [was] certainly concerned by the apparent failure of the timely development of affordable housing in the Borough" and found "[i]t [was] undisputed the Borough ha[d] failed to provide evidence of final satisfaction of all conditions identified and referenced under the court's January 25, 2019 order of conditional final judgment of compliance and repose which was entered over four years ago."

However, the judge found ERUR's submissions and the certifications of Klugmann and Lamatina "d[id] not provide the court with evidence warranting the relief . . . sought." The judge found "[i]t [was] undisputed that the [s]ettlement [a]greement executed in th[e] matter during November 2017 did not identify [ERUR's o]ff-[s]ite [p]roperty located at Block 610, Lot 1 as the parcel specifically designated for the seven subject units." As such:

> The court concludes that there is nothing in the record presented which supports the somewhat extreme relief requested, that is, an order to compel the Borough to grant site plan approval (including variances) for the construction of seven affordable [housing] units on Block 610, Lot 1 without the [Board's] approval and

23

without amendment of the [r]edevelopment [a]greement.

The judge also found ERUR's reliance on <u>Cranford Development Associates, LLC v. Township of Cranford</u>, 445 N.J. Super. 220 (App. Div. 2016), was "misplaced." According to the judge, in <u>Cranford</u>, the Township had "enacted ordinances which prohibited the construction of affordable housing," whereas here, the judge did "not find any evidence suggesting that the Borough ha[d] affirmatively enacted zoning which . . . prevent[ed] compliance with the terms of the [s]ettlement [a]greement." The judge similarly found ERUR's reliance on <u>Toll Bros., Inc. v. Township of West Windsor</u>, 173 N.J. 502 (2002), equally "misplaced" because in that case, "the trial court found that the Township of West Windsor had engaged in exclusionary zoning entitling the developer to a builder's remedy," whereas "[h]ere, the record reveal[ed] that the Borough ha[d] not engaged in exclusionary zoning." The judge further found that "the proposed off-site development d[id] not offer a 'substantial' amount of affordable housing nor ha[d] there been any credible finding as to the [o]ff-[s]ite [p]roperty's suitability for the use."

The judge concluded that "[w]hile the delay in final compliance in development of the agreed upon affordable housing [was] troublesome, the court . . . does not find that the Borough's actions (or inaction), when reviewed

in the broad scope of all of the facts and circumstances presented, . . . warrant automatic site plan approval of the [o]ff-[s]ite [p]roperty." In support, the judge "emphasize[d] that the [o]ff-[s]ite [p]roperty is not identified in the [s]ettlement [a]greement or in the [o]rder of [c]onditional [j]udgment of [c]ompliance and [r]epose." Therefore, the judge found "no basis to grant automatic site plan approval where the [o]ff-[s]ite [p]roject undeniably would require multiple variances which ha[d] not been properly reviewed or approved by the [Board]." Further, according to the judge, "[t]here [was] nothing in the record which compel[led] approval of the [o]ff-[s]ite [p]roject when other avenues of compliance [we]re available to the [r]edeveloper."

ERUR moved for reconsideration of the May 12, 2023 order and for "a hearing to assess site suitability and . . . grant site plan approval" for the 129 Kinderkamack Road project. In opposition, the Borough provided "draft sketch . . . plans on an alternative site" for the off-site units prepared by the Borough's engineer and "offered to ERUR by the Borough for development." The judge denied ERUR's reconsideration motion in an order entered on August 28, 2023.

In an accompanying written opinion, the judge found no "basis warranting reconsideration" and "once again f[ound] that the argument and information

present in movant's papers in support of its motion in aid of litigant's rights, [i.e.,] the certifications of Klugmann and former Mayor Lamatina, d[id] not provide the court with evidence warranting the relief . . . sought." The judge also considered the Borough's offer of another location for the seven units, finding "no basis to compel approval of the [o]ff-[s]ite [p]roject when other avenues of compliance, such as a site suitable for between eight . . . and twelve . . . units, [we]re available to the [r]edeveloper." This appeal followed.

## III.

On appeal, ERUR argues the judge erred in denying its motion in aid of litigant's rights to enforce the January 25, 2019 judgment under Rule 1:10-3.[2] We disagree.

Rule 1:10-3 provides in part that "[n]otwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action." The Rule provides a "means for securing relief and allow[s] for judicial discretion in fashioning relief to litigants

---

[2] Although ERUR identified the order denying reconsideration and the paragraph of the January 30, 2023 order awarding counsel fees and costs in its notice of appeal, it failed to argue further or cite any law in its merits brief. Accordingly, we consider the arguments abandoned. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2026) ("[A]n issue not briefed [on appeal] is deemed waived.").

A-0238-23

when a party does not comply with a judgment or order." N. Jersey Media Grp. Inc. v. State, Off. of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017) (alteration in original) (quoting Mount Laurel IV, 221 N.J. at 17-18).

A Rule 1:10-3 motion to enforce litigant's rights "is a means to 'coerce [a party] into compliance with the court's order.'" Abbott v. Burke, 206 N.J. 332, 342 n.3 (2011) (quoting Essex Cnty. Welfare Bd. v. Perkins, 133 N.J. Super. 189, 195 (App. Div. 1975)). Such a motion may also be brought to enforce compliance with a settlement agreement or consent order by specific performance. Jersey City Redevelopment Agency v. Clean-O-Mat Corp., 289 N.J. Super. 381, 404 (App. Div. 1996). In the context of affordable housing litigation, Rule 1:10-3 permits a party "to protect its and third parties' interests in municipal compliance with constitutional affordable housing obligations." Mount Laurel IV, 221 N.J. at 19-20.

"The scope of relief in a motion in aid of litigants' rights is limited to remediation of the violation of a court order." Abbott, 206 N.J. at 371. "Relief under Rule 1:10-3 . . . is not for the purpose of punishment, but as a coercive measure to facilitate the enforcement of the court order." N. Jersey Media Grp. Inc., 451 N.J. Super. at 296 (omission in original) (quoting Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997)). "The focus being on the vindication

of litigants' rights, relief sought pursuant to Rule 1:10-3 does not necessarily require establishing that the violator of an order acted with intention to disobey." Mount Laurel IV, 221 N.J. at 17. Thus, "wilful disobedience and lack of concern for the order of the court[] is . . . irrelevant in a proceeding designed simply to enforce a judgment on a litigant's behalf." Ibid. (emphasis omitted) (quoting Lusardi v. Curtis Point Prop. Owners Ass'n, 138 N.J. Super. 44, 49 (App. Div. 1975)).

We review a trial court's adjudication of a Rule 1:10-3 motion for abuse of discretion. N. Jersey Media Grp., Inc., 451 N.J. Super. at 296. "Although the ordinary abuse of discretion standard defies precise definition, it arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (internal quotation marks omitted) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). "[A] functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue." Ibid.

Applying these principles, we discern no abuse of discretion and affirm substantially for the cogent reasons articulated by the judge. We agree that

28

nowhere in either the November 2017 settlement agreement or the January 25, 2019 judgment does it require or specify that the seven off-site units from the Block 419 project were to be built at 129 Kinderkamack Road. Without such a provision, ERUR cannot show the Borough's noncompliance to justify granting the requested relief. See Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div. 2012) (explaining Rule 1:10-3 permits entry of an order compelling a "disobedient party['s]" compliance with "a prior order").

We are unpersuaded by ERUR's remaining arguments challenging the judge's ruling. ERUR argues that the constitutional right to fair housing prevails over any local ordinance that would impede an affordable housing development and courts have "remedial authority" to act in place of local zoning authorities when a site is suitable for affordable housing. Undoubtedly, municipal land use regulations "that do not provide the requisite opportunity for a fair share of the region's need for low[-] and moderate[-]income housing conflict with the general welfare and violate the state constitutional requirements of substantive due process and equal protection." Mount Laurel II, 92 N.J. at 208-09. Further, there is an affirmative obligation on every municipality to remove unnecessary cost-producing requirements and restrictions that are "barriers to the construction of their fair share of lower[-]income housing" including "zoning

and subdivision restrictions and exactions that are not necessary to protect health and safety." Id. at 258-59.

Still, "[b]uilders may not be able to build just where they want," and "[t]he specific location of such housing will of course continue to depend on sound municipal land use planning." Id. at 211. To that end, "[t]he Constitution of the State of New Jersey does not require bad planning." Id. at 238. "Once a municipality has revised its land use regulations and taken other steps affirmatively to provide a realistic opportunity for the construction of its fair share of lower[-]income housing, the Mount Laurel doctrine requires it to do no more." Id. at 259-60. Once a municipality has done so, "the fact that its land use regulations contain restrictive provisions incompatible with lower[-]income housing, such as bedroom restrictions, large lot zoning, prohibition against mobile homes, and the like, does not render those provisions invalid under Mount Laurel." Id. at 260; see also Shire Inn, Inc. v. Borough of Avon-By-The-Sea, 321 N.J. Super. 462, 467 (App. Div. 1999) ("None of the principles [of the Mount Laurel doctrine] suggest that standards and practices of sound land use planning or control may be negated to achieve compliance.").

Ultimately, "Mount Laurel is not an indiscriminate broom designed to sweep away all distinctions in the use of land." Mount Laurel II, 92 N.J. at 260.

However, "[i]n the event of a municipality's inability or failure to adopt a compliant [affordable housing] plan to a court's satisfaction, the court may consider the range of remedies available to cure the violation." Mount Laurel IV, 221 N.J. at 20. The court may, as here, appoint a monitor or a master "to aid in resolution" of a municipality's Mount Laurel obligations. Mount Laurel II, 92 N.J. at 287. Our courts have also at times "order[ed] a municipality to take certain action, which action could be taken only by the adoption of a resolution that the municipality had not adopted." Id. at 288 (citing W. Point Island Civic Ass'n v. Twp. Comm. of Dover, 54 N.J. 339, 342-43, 350 (1969)).

Here, the Borough has put in place "land use regulations and taken other steps affirmatively to provide a realistic opportunity for the construction of its fair share of lower[-]income housing." Id. at 259-60. "[T]he Mount Laurel doctrine requires it to do no more." Id. at 260. Having done so, the fact that the Borough has a zoning provision requiring above at-grade residential units in the CBD zones that is "incompatible" with ERUR's proposed project does not render the provision "invalid under Mount Laurel," particularly when ERUR could

A-0238-23

place the units in the Block 419 project, which complies with the Borough's zoning laws, or pay money in lieu of the seven units. See id. at 238, 260.[3]

Equally unavailing is ERUR's contention that the judge failed to properly consider the Borough's years of noncompliance with the Mount Laurel doctrine, encapsulated in the 2001 Law Division decision invalidating the Borough's land use regulations. As troubling as the Borough's history of Mount Laurel noncompliance is, that history is irrelevant to the current action. We also reject ERUR's assertion that the Borough chose to build the seven off-site units at 129 Kinderkamack Road. ERUR's only support for this assertion was provided in Klugmann's and Lamatina's certifications. However, even if Lamatina as the former mayor had made agreements with ERUR to build the seven off-site units from the Block 419 project at 129 Kinderkamack Road, under the Borough's form of government, the mayor is unable to bind the Borough to any kind of contract without authorization of the Council, the legislative body of the municipality. See N.J.S.A. 40A:60-5 (describing the powers of the mayor); N.J.S.A. 40A:60-6 (describing the powers of the council, including to "pass, adopt, amend and repeal any ordinance or . . . resolution for any purpose . . . or

---

[3] To support its argument that the court should have ordered site-specific relief, ERUR relies on largely builder's remedy cases. However, ERUR did not bring a builder's remedy or exclusionary zoning action against the Borough.

for the accomplishment of any public purpose for which the municipality is authorized to act under general law").  There is no ordinance or resolution in the record evidencing any agreement between ERUR and the Borough to place affordable housing at 129 Kinderkamack Road.

Although ERUR consistently argues that the Borough has the burden to find another location for the seven off-site units to adequately provide the affordable housing it agreed to in the settlement agreement with FSHC and the January 25, 2019 judgment, it wholly fails to acknowledge, as the judge found, that there are "other avenues of compliance" available.  ERUR has the ability, as the developer of the Block 419 project, to place the seven units in the Block 419 project itself or pay money in lieu of seven units pursuant to the redevelopment agreement for the Block 419 project.  That ERUR chooses not to do so does not allow it to wield Mount Laurel as a sword to build affordable housing at the location it chooses, or to assert that the Borough is failing in its constitutional obligations under the doctrine.  See Mount Laurel II, 92 N.J. at 280 ("Care must be taken to make certain that Mount Laurel is not used as an

A-0238-23

unintended bargaining chip in a builder's negotiations with the municipality . . . .").[4]

To the extent we have not specifically addressed any of ERUR's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division

---

[4]   Equally disingenuous is ERUR's argument that the trial court erred in considering "automatic site plan approval" as the only relief, instead of granting a hearing on site suitability for 129 Kinderkamack Road.  In ERUR's motion in aid of litigant's rights, it did not ask for a site suitability hearing.  It only requested automatic site plan approval for the 129 Kinderkamack Road project without the need for a variance or amendment of the Borough's redevelopment plan.  ERUR cannot now argue that the trial court erred in denying relief it did not seek.  Although ERUR sought a site suitability hearing in its reconsideration motion, as previously stated, ERUR has abandoned those arguments.  In any event, a reconsideration motion is not an appropriate vehicle to raise new issues. (See Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015) (noting a motion for reconsideration "does not provide the litigant with an opportunity to raise new legal issues that were not presented to the court in the underlying motion").

A-0238-23